# JOHN D. CLEGHORN

## *v.*

## THOMAS H. POSTLEWAITE *et al.*

1. ASSESSMENT — *when void.* When a party liable to taxes makes out, and delivers to the assessor a list of his taxable property, which is accepted by the assessor, without question, that officer has no power afterward arbitrarily, and of his own motion, to alter it, without first giving the party assessed notice.

2. CHANCERY — *when a court of equity will restrain the collection of a tax based on an illegal assessment.* Where an assessor, after having accepted a list of taxable property, arbitrarily increases it, without giving notice to the taxpayer, and the latter has no knowledge of the increase until after the time allowed for an appeal has expired, a court of equity will restrain the collection of the tax based upon the assessment.

APPEAL from the Circuit Court of Iroquois county; the Hon. CHARLES R. STARR, Judge, presiding.

This was a bill in chancery filed by Cleghorn in the Circuit Court of Iroquois county to restrain the town collector from collecting taxes on $10,000 wrongfully assessed against him.

The bill alleges that the complainant commenced his residence in the town of Lodi, Iroquois county, in December, 1863 and remained there until December, following. That in June,

1864, Thomas H. Postlewaite, being the assessor of the town of Lodi, called on the complainant for a list of his taxable property, and for that purpose left a blank statement to be filled up by him; that the complainant, on the 27th day of June, 1864, filled out said blank statement, returning therein two horses, valued at $100; one watch, six dollars; amount of credits on hand, about $25,000; the statement further showed, that the indebtedness of the complainant was about $30,000; that the list was certified by the complainant as being a full, complete and perfect list of all his property liable to taxation; that the same was delivered to the town assessor, who received it without objection.

The complainant further states in his bill, that, from the time of the delivery of said list to the assessor, until in December, 1864, he believed the same was perfectly satisfactory to that officer; that in December, 1864, the said Postlewaite, then being the collector of said town, called upon him for a payment of his taxes, claiming, that the complainant's taxable property was assessed at $10,000, upon which there was due $405 taxes.

The bill further shows, that the sum of $10,000, assessed against the complainant was wholly and entirely unjust, erroneous and revengeful; that he had no knowledge of said erroneous assessment until December, 1864; that as no time during said year was he possessed, or had in hand $10,000 over and above his indebtedness; that he did not know by whom the sum was assessed against him; and that had he known that any sum was assessed different from the amount given in the list, he would have had it corrected.

The bill further alleges, that the defendant, Postlewaite, now being collector of taxes for said town, is endeavoring to collect the said sum of $405 from the complainant, and threatens to levy on property unless that sum be paid; that the complainant fears that the said town collector will destrain his property, or return said taxes as delinquent to the county collector. A copy of the list of taxable property delivered by the complainant to the town assessor is attached to the bill as an exhibit.

The bill prays for an injunction restraining the collection of

the tax, and that the said assessment be set aside, and be declared null and void. An injunction was granted by the master in chancery.

The defendant demurred to the bill. Upon the hearing, the demurrer was sustained; and upon motion the bill dismissed.

The case is brought to this court by appeal.

Mr. GEO. B. JOINER, for the appellant.

Messrs. WOOD & LONG, for the appellees.

Mr. JUSTICE BREESE delivered the opinion of the Court:

The question presented by this record is not of difficult solution. When a party liable to taxes, makes out and delivers to the assessor a list of his taxable property, and which is accepted by the assessor without question, that officer has no power afterward, arbitrarily and of his own motion, to alter it, without first giving the party assessed notice. The law on this subject is too plain to be misunderstood.

Section 6 of the act of 1853 provides, that every person required to list property, shall make out, sign and deliver to the assessor, when required, a certified statement of all the personal property, moneys, credits, etc., in his possession or under his control, on the 1st day of May, of each year, for which the property is required to be listed. Scates' Comp. 1049. Section 8 provides a penalty for a fraudulent list, or for a refusal to deliver a list to the assessor when called on by him for that purpose, and section 9 provides, if the assessor believes that any property has been valued at less than its true value, in accordance with the rules and customs of valuing property for taxation, he shall value and charge such property at its true value, and shall notify the person listing such property of such increased valuation.

Section 26, of the revenue act of 1849, also provides, that the assessor shall, at the time of making the entry in his book, as required by the 16th section of chapter 89 of the Revised L aws, give to the person so assessed, a certificate of the entry so made,

of the value of the real and personal property so assessed; and the assessor shall not make any change or alteration in such entry, after having given such certificate, without giving to the person assessed, an additional certificate showing such increased assessment. Id. 1019.

The 16th section of chapter 89 gives the assessor authority to require every owner of property to give in the list under oath.

By section 2 of the act of 1853, the term "property," whenever used in the act, shall be held to mean and include every tangible thing, being the subject of ownership, whether animate or inanimate, real or personal. Id. 1047.

The law has been careful to protect an owner of property, after giving in his list of taxable property, and which has been accepted without objection by the assessor, from any interference with the list by the assessor, except on notice to the owner. This notice affords the owner an opportunity to explain and defend the list he has given in, and to the accuracy of which, the assessor might require the owner to be sworn. The law never designed that property owners should be put so completely in the power of the assessor, as he would be, did the assessor have the authority, secretly, and without the knowledge of the owner, to re-assess the property. Could he do so, there would be in many cases but slight protection to the owner.

But the appellees say, the appellant had his remedy at law, by application to the assessor, town clerk and supervisor, on the last Saturday in June, to have the assessment revised and reviewed, as provided by section 32 of this act of 1853. But the bill states, and that is admitted by the demurrer, appellant had no knowledge of this re-assessment, until the month of December following, when the collector was proceeding to collect the tax on this highly increased re-assessment. Had the notice been given appellant of the re-assessment in time for this application on the last Saturday in June, there might be some ground for the position taken by appellees, that the remedy was at law under the statute. This case shows the necessity for notice to the owner on the re-assessment. The act of the

assessor, without notice to the owner, was void, and the demur-rer to the bill should have been overruled, and appellees enjoined from collecting the tax on the re-assessment, above the amount to which the property was subject when listed by the owner, and the list delivered to, and accepted by, the assessor.

The decree of the Circuit Court is reversed and the cause remanded, for further proceedings consistent with this opinion.

*Decree reversed.*