## THE FIRST NATIONAL BANK OF SHAWNEETOWN

*v.*

## JOEL COOK *et al.*

1. TAXES—*when equity will restrain the collection:* It is well settled in this State, that a court of equity has the power to restrain the collection of taxes, where fraud has occurred, or where the assessment or levy has been made without legal authority.

2. SAME—*altering assessment without notice to owner.* The assessor has no power, after he has accepted from the owner a list and valuation of his property, arbitrarily, and without notice to the owner, to alter the assessment and materially increase the valuation of his property.

3. After an assessment of property for taxation has been made, and equalized by the State board, the taxes extended thereon, and the books in the hands of the collector, even if the county board has any legal authority to change the assessment, it certainly has no power to make such change to the detriment of the tax-payer, without notice to him, and so far as it may increase the assessment without notice, its action is void.

4. SAME—*by cities and towns.* The certificate of the amount required to be levied as taxes by cities, towns, etc., under section 122 of the act of 1871-2, must be filed with the county clerk within the time prescribed by law, or the levy will be void, and the collection of the same may be enjoined.

APPEAL from the Circuit Court of Gallatin county; the Hon. TAZEWELL B. TANNER, Judge, presiding.

Mr. ANDREW D. DUFF, for the appellant.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was a bill in chancery, filed by the First National Bank of Shawneetown, in the Gallatin circuit court, against Joel Cook and Elias Ulmsnider, collectors of taxes, to restrain them from collecting certain taxes assessed against the complainant in the bill, on the ground the taxes were unlawfully assessed, the amount of taxes actually due having been tendered and refused before the filing of the bill.

The defendants interposed a demurrer to the bill, which the court sustained. The injunction was dissolved, and the bill dismissed.

To reverse this decree the complainant appeals.

The allegations of the bill properly pleaded are admitted to be true by the demurrer. The question then is, conceding the facts set up in the bill to be true, do they, as alleged, authorize a court of equity to interfere and grant the relief prayed for in the bill?

The bill charges that A. K. McCabe was the assessor in Gallatin county for the year 1872; that prior to the first day of July, 1872, the assessor called at the bank for the purpose of assessing the shares of stock owned and held by the different owners thereof; that 1960 shares owned by the president and cashier of the bank, were listed, and assessed at $40 per share, or forty cents on the dollar's worth of stock; that the usual blanks were filled up and signed, and the valuation placed upon the shares was accepted by the owners without objection; that the other 40 shares of bank stock were listed by the owners thereof at $40 per share.

The bill further shows that the assessor did not complete the assessment of the property in the county and return his books until the third day of August, 1872; that then, and

not till that time, did complainant discover that the assessor had changed and altered the assessment of said shares, by raising their assessed value from $40 per share to $100; that said change by the assessor was made without the knowledge or consent of complainant, or of any of the owners of said shares of stock, and without notice to them.

It also appears from the bill, that the State Board of Equalization, at the August meeting, allowed a reduction upon the aggregate assessment of personal property in Gallatin county, of thirty-six per cent, which left the shares of bank stock assessed at the rate of $64 per share, and, in consequence of the reduction made by the State board, all other personal property of the county, out of the city of Shawneetown, became assessed at the rate of twenty-one cents on each dollar, and within the incorporation at twenty-five cents on each dollar.

The bill also charges that the county board of Gallatin county, in consequence of the assessor having failed to complete his assessment within the time required by law, did not meet on the second Monday of July, 1872, nor was there any meeting of the county board prior to the meeting of the State Board of Equalization, in consequence of which complainant was deprived of an opportunity to apply to the county board for a correction of the assessment; that the county board held no meeting until the first Monday of September, 1872, at which time complainant appeared, and made application for the correction of the assessment; that the county board made an order reducing said assessment from $100 per share to $50 per share, and directed the county clerk to extend the taxes according to the corrected assessment, which left the shares of bank stock, after allowing the reduction made by the State board, and the correction made by the county board, assessed at $32 upon each $100; that the collector's books were made out, and, on the 15th of January, 1873, delivered to the collector, as ordered and directed by the county board; that the State and county taxes on the 2000

shares of bank stock, as computed, assessed and extended, amounted to the sum of $2464.

The bill charges that on the 7th day of March, 1873, the county board, at a meeting held for that purpose, entered an order rescinding the former order made in regard to the assessment, and increased the valuation of said shares from $32 to $64; that after this action of the board, the county clerk obtained possession of the collector's books, and altered the same by extending the taxes at the valuation of $64 per share of bank stock, in place of $32, as originally computed and extended, thus increasing the taxes on the shares of bank stock from $2464, as originally computed and entered upon the books of the collector, to the sum of $4928.

It will not be necessary to consider all the questions raised by appellant in the brief filed by its counsel, as one point made by the bill will be conclusive of the case.

It is well settled, by a number of decisions of this court, that it is within the power of a court of equity to restrain the collection of taxes where fraud has occurred, or where the assessment or levy has been made without legal authority. *Drake* v. *Phillips*, 40 Ill. 388; *Vieley* v. *Thompson*, 44 Ill. 9; *McConkey* v. *Smith*, Sept. term, 1874.

It appears that the two thousand shares of bank stock were listed, and given in to the assessor, at a valuation of $40 per share, which was accepted by the assessor without any objection.

The assessor, without notice to the bank or owners of the shares, changed the assessment upon his books, and increased the valuation from $40 to $100 per share.

The assessor has no power, after he has accepted from the owner a list and valuation of his property, arbitrarily and without notice to alter the assessment, and materially increase the valuation of the property. This was expressly ruled in *Cleghorn* v. *Postlewaite*, 43 Ill. 428, and reaffirmed in *McConkey* v. *Smith*, *supra*.

A different rule would place the property owner at the mercy of the assessor, and would be attended with consequences dangerous in their character to the rights of the citizen.

While the law requires the owner of property to list it with the assessor at a fair value, it nowhere gives the assessor power, in a secret manner and without notice to the owner, to alter the value of the assessed property to the detriment of the party assessed.

The change in the assessment of the shares of bank stock, made by the assessor, was, therefore, illegal and void.

If it be true, that the county board had no power, at the September meeting, to entertain the complaint of appellant, and reduce the assessment—upon which point, however, we express no opinion, as the decision of that question is not necessary to a proper disposition of the questions involved in this record—yet, the assessment originally made by the assessor by which the bank stock was assessed at forty cents on the dollar, and as corrected by the State Board of Equalization, would form the correct basis upon which appellant should be required to pay taxes upon the shares of bank stock.

The action of the county board at the meeting held on the 7th day of March, 1873, in which the order made at the September meeting was rescinded, can not be regarded as otherwise than illegal and void.

At that time the assessment had been made, and equalized by the State Board of Equalization, the taxes extended, and the books were in the hands of the collector, for the purpose of collecting the taxes. Even if it was conceded that, at this time, the county board had any power to change the assessment, it is a proposition upon which there can be no doubt, that the board had no power to make any change in the assessment without notice to appellant.

The bill charges, and the truth of the allegation is admitted by the demurrer, that appellant had no notice whatever

of the action of the board.  The order, therefore, at that time made, so far as it increased the assessment, was void.

We are, therefore, of opinion, as the facts appear by the record before us, that appellant could only be required to pay taxes upon the valuation of the shares of bank stock at the rate of $40 on the share, less the reduction made by the State Board of Equalization.

The only remaining question presented by the record, is in regard to the validity of the city taxes assessed upon the shares of bank stock, and attempted to be collected by the city of Shawneetown, where the bank is located.  Sec. 122, act of 1871–2, page 31, under which this tax was levied, declares, " the proper authorities of towns, townships, districts, and incorporated cities, towns and villages, shall, annually, on or before the second Tuesday in August, certify to the county clerk the several amounts which they require to be raised by taxation."

It appears, by the record, that the city authorities of Shawneetown did not certify to the county clerk the amount required to be raised in 1872, until the 5th day of October.

The statute in force at the time required the amount to be certified on or before the second Tuesday in August.  The legislature has seen proper to prescribe the time within which cities must furnish the amount to the county clerk necessary to be raised by taxation, and courts have no power to extend the time or change the law.

This is not an open question in this court.  In *Mix* v. *The People,* June term, 1874, it was held the levy must be made within the time prescribed by the act, or it would be void.

We see no reason to change the conclusion arrived at in that case, and the decision there announced must be conclusive of the question here presented.

The decree of the circuit court will be reversed and the cause remanded, to be disposed of in conformity to this opinion.

*Decree reversed.*