*(Superior Court of Cook County. In Chancery.)*

## Nickerson, et al. v. Kimball, et al.
### Barton, et al. v. Same.
### Coolbaugh, et al. v. Same.
### Blair, et al. v. Same.
### Fairbank, et al. v. Same.
### Sturges, et al. v. Same.

(May 9, 1877.)

1. TAXATION OF NATIONAL BANK STOCK. The statute provides that the stockholders in every bank located in Illinois shall be assessed and taxed on the value of their shares of stock therein;

that this tax shall be levied according to "valuation." These provisions are in harmony with the constitution inasmuch as an error in the views different men may take of values does not show want of "uniformity."

2. COUNTY BOARD—COMPLAINT. The county board, acting as a board of equalization, may review and correct an assessment on shares of stock as shall appear to be just, upon complaint to the board, provided the person assessed, or his agent shall be notified of such complaint, if a resident of the county.

3. JURISDICTION—NOTICE. The board of review cannot review an assessment without special notice to the persons affected thereby.

4. NOTICE—HOW AND TO WHOM IT MAY BE GIVEN. It is error in the state board of equalization to make and correct an assessment without special notice to the person affected thereby. Notice is sufficient when actually brought home to such party. Appearance before the board to resist the review and correction of an assessment is a waiver of the right to notice. Notice to an agent is sufficient.

5. TENANT—NOTICE SERVED UPON. A notice served upon the tenant is not a sufficient service upon the landlord.

6. DIRECTOR—SUFFICIENT NOTICE TO. It is a general rule that notice to an individual director, who has no duty to perform in relation to the subject-matter of the notice, is not a notice to the corporation.

7. AGENT—NOTICE TO BIND PRINCIPAL. It is a fundamental principle that notice served on the agent to bind the principal must be served whilst the agent is acting within the scope of his agency.

8. BANK—AGENT OF STOCKHOLDERS. The statute makes the bank the agent of the stockholder, for some purposes connected with the taxation of the shares of stock. The bank acts as quasi trustee in managing the business of the shareholders. Notice to the bank is therefore notice to the stockholders.

9. COMPLAINT—NOTIFICATION—SUFFICIENCY OF. Any one may complain that another is assessed too low, but such complaint cannot be acted upon until the party assessed, or his agent, shall be notified of such complaint. The complaint should contain some traversable fact, and not be vague and general, so that the party appearing may be informed of the matter which he is called to meet.

10. EQUITY—JURISDICTION TO RESTRAIN COLLECTION OF TAXES. A court of equity will not restrain the collection of taxes except in cases where the property assessed is exempt, or the tax is unauthorized or unless there is fraud.

11. TECHNICAL OBJECTIONS. Mere technical objections not affecting the justice of the tax itself, should not be regarded.

Bill for injunction. Heard before Judge Moore. The facts are stated in the opinion.

*Charles Hitchcock, Wirt Dexter, Sidney Smith, Melville W. Fuller, Geo. W. Kretzinger,* attorneys for plaintiffs.

*Elliott Anthony* and *John M. Rountree,* attorneys for defendants.

Judge MOORE delivered the opinion of the court:—

The constitution of the state provides for raising revenue by levying taxes, by or according to "valuation" of the property to be taxed; everyone shall be taxed and pay in proportion to the value of his property. This rule is extended to persons and corporations owning or using franchises and privileges. Taxes must be "uniform" in respect to persons and property; every law that imposes a tax must regard every man alike, *vide* Constitution, art. 9, secs. 1, 9, 10, Hurd's. Rev. Stat., pp. 74, 75.

The law must not discriminate for or against any one. It must be uniform. The law enacted under the constitution must be enforced by men who may err in judgment, and therefore burdens may fall unequally. This will result from the different views that different men may take of values and the like, and does not show that the law imposing a tax is wanting in the principle of uniformity. This principle of uniformity must extend to every person and to every corporation.

"Personal property . . . shall be valued at its fair cash value." Chap. 120, sec. 3, Hurd's Rev. Stat., p. 857.

"*The stockholders* in every bank located within this state, whether such bank has been organized under the banking laws of this state, or of the United States, shall be assessed and taxed on the value of their shares of stock therein, in the county, town, district, village or city where such bank . . . is located, and not elsewhere, whether such stockholders reside in such place or not. . . . Taxation of such shares shall not be at a greater rate than is assessed upon any other monied capital . . . where such bank is located." Sec. 35.

In each of said banks there shall be a list of the names and residences of its stockholders, and of the number of shares held by each. This list shall be open to the inspection of the revenue officers, "and it shall be the duty of the assessor to ascertain and report to the county clerk a correct list of the names and residences of all stockholders in any such bank, with the number and assessed value of all such shares held by each stockholder." Sec. 36.

"The county clerk . . . shall enter the valuation of such shares in the tax lists in the names of the respective owners of the same, and shall compute and extend taxes thereon the same as against the valuation of other property in the same locality." Sec. 37.

This tax is declared to be a lien upon the respective shares of stock. Sec. 38.

It is made the duty of the bank or its officers to retain the dividends belonging to the respective stockholders until the tax shall have been paid. Any officer violating this provision of the law shall thereby become liable for such tax. The collector may sell the shares of stock when the owner refuses to pay the tax. Chap. 120, secs. 35, 36, 37, 38, 39, Rev. Stat. p. 864 (1874).

There can be no question but that these provisions of the law are in harmony with the constitution. The "valuation" is required, as is "uniformity," and all as provided by the constitution. The law makes the same provision in valuation to every one who may own the stock of the various banks in the state. If the tax imposed by this law operates unequally, it must be because the law itself is not complied with.

It was seen that the assessor must be a man, and so might fail in discharging his duty. Hence the county board, acting as a board of equalization, may review and correct what has not been done correctly. "On the application of any person considering himself aggrieved, or who shall complain that the property of another is assessed too low, they shall review the assessment and correct the same as shall appear to be just." That is to say, if any one thinks his property has been valued too high, and so considers himself "aggrieved," he may com-

plain, and if the board regard his complaint as well founded, then they will review and correct the assessment, by reducing the valuation; or it may be some one thinks that burdens are not equal, and so "complains that the property of another is assessed too low." It is then the duty of the board to review and correct the assessment as shall appear to be just. If the complaint is well founded, as in the former case, the assessment can be corrected only by increasing the "valuation." However, it is provided that "no complaint that another is assessed too low shall be acted upon until the person so assessed or his agent shall be notified of such complaint, if a resident of the county." Chap. 120, sec. 97, subsec. 2, Rev. Stat. p. 873.

One other provision of the statute has been referred to in considering these cases. That provision, it is claimed, modifies the other provisions referred to materially, modifies many decisions of the supreme court. It is provided (*inter alia*) that "no error or informality in *the proceedings* of any of the officers connected with *the assessment,* levying or collecting of the taxes, *not affecting the substantial justice of the tax itself,* shall vitiate or in any manner affect the tax or the *assessment* thereof." Chap. 120, sec. 191, Rev. Stat. p. 890. True it is, this provision is found in the middle of a section that is providing for the proper mode of rendering judgment on the delinquent tax lists; but yet there is no language or words used in any other part of the section that changes, or modifies, or limits the meaning of the provision enacted. The words would mean the same, neither more nor less, if they stood alone in a separate section, or in any other connection.

The provisions under consideration, when brought together, then, may be read in this way: Any one may complain that another is assessed too low, but such complaint shall not be acted upon until the person so assessed, or his agent, shall be notified of such complaint, if a resident of the county; and no error or informality in the proceedings of any of the officers connected with the assessment, levying or collecting of the taxes, not affecting the substantial justice of the tax

itself, shall vitiate or in any manner affect the tax or the assessment thereof.

Nickerson *et al.* aver that they are shareholders of the stock of the First National Bank of Chicago. Barton *et al.* are shareholders of the stock of the Fifth National Bank of Chicago. Coolbaugh *et al.* are like shareholders of the stock of the Union National Bank of Chicago. Blair *et al.* are shareholders of the stock of the Merchants' National Bank of Chicago. Fairbank *et al.* are shareholders of the stock of the Commercial National Bank of Chicago; and Sturges *et al.* are the shareholders of the stock of the Northwestern National Bank of Chicago. The respective complainants make substantially the same averments. The complainants are all residents of the county of Cook, and the respective banks are located in Chicago.

In addition to other averments which are necessary to give jurisdiction, it is averred that the shares of stock of each bank were "assessed and taxed on the value of the shares;" that the assessor of the town of South Chicago, as such assessor, listed the shares of the capital stock of the respective banks for taxation, he giving the valuation thereof as fixed by himself; that this assessment so made by him was returned to the county clerk; that then it was the duty of the clerk to enter the valuation of the shares, as made by the assessor, in the tax lists, in the names of the respective owners, and compute and extend the tax therein on the valuation so made; that these things are required by the provisions of the statutes hereinbefore quoted; "that the assessor, in making the assessment for the year 1876, listed all bank shares and like property at one-third of the value which in his judgment said shares were actually worth."

To this point no question is raised but that the law has been complied with. But complaint was made by persons stating that they considered themselves aggrieved, and complained that the personal property of the following named persons, firms and corporations have been assessed too low for the year 1876, to wit: *shareholders* "of the stock of the respective banks, and designating the name of the bank.

This complaint was addressed to the Board of Commissioners of Cook County, and those complaining asked the board to review the assessments for 1876 of said persons, firms and corporations, and correct the same as shall appear to be just." This was the only complaint that was filed, and the only notice of this complaint was given to the presidents or cashiers of the banks.

The board did review the assessments, and corrected them by increasing the valuation very considerably; but in no case did the valuation or assessment thus increased amount to more than one-third of what appears to be fair cash market value of the respective shares of stock. It is admitted that the stock is personal property, and it is not claimed by any complainant that the shares, by either the assessor or board, were "valued at their fair cash value."

The complainants aver that the county board had no jurisdiction of the matter, or, rather, of the persons of the complainants, until the complainants or their respective agents had notice of such complaint; and they claim that neither the bank or any officer of the bank was agent of the shareholders.

A number of authorities are referred to by the learned counsel to show that the question of notice is *jurisdictional.* It is perhaps by some of the counsel conceded that the county board had jurisdiction of the subject-matter, and it is claimed that the said board could have jurisdiction of the persons residing in Cook county only when they have notice. This notice is not required as to any one residing beyond the limits of Cook county. If the complainants be correct, then the fact that notice to non-residents is not required must operate as a hardship. It is not protecting all alike. It must be borne in mind that the valuation or assessment made and returned by the assessor is made by procuring the necessary information from the bank. The officer calls at the bank and makes his list, and then the valuation is made and returned. Of this fact and of the additional fact that dividends must be retained by the bank until the tax is paid, every person must take notice. This assessment and this return, it may be said, is the matter that, in the first place, con-

9

fers jurisdiction or sets in motion the officers and those having jurisdiction. It has been held in our own state, "that where the board of supervisors exercise the power to revise the assessment of an individual, he must have notice, and an opportunity to be heard, before it can be legally done." *Cleghorn v. Postlewaite*, 43 Ill. 428; *Darling v. Gunn*, 50 Ill. 424; *First National Bank of Shawneetown v. Cook et al.*, 77 Ill. 622.

This last named decision was made under the law as it existed March 7, 1873. The provision of the law that is supposed to modify the law as it then existed, took effect July 1, 1873, and provides that no error or informality not affecting the substantial justice of the tax itself shall vitiate or affect the tax or the assessment thereof.

In the case of *Darling v. Gunn*, 50 Ill. 429, the court holds: "The tax, to the extent it was increased, . . . having been levied on an unauthorized assessment, made by persons having no jurisdiction of the person to make the assessment, without notice to appellant, its collection should have been enjoined."

This case falls within the former decisions of the court, in which it is held that a court will not interfere to restrain the collection of a tax unless it is levied by persons having no authority. As the law then stood, it was incumbent on the court to find that error existed; but it was not necessary to find more than that error existed. That was all that was required. It was not necessary to pass upon the jurisdictional question. As the law now stands, this inquiry is necessary, since the court will not enjoin the collection of a tax for *mere* error or informality. It cannot be that the various officers must give notice to every one specially concerned before they can act in relation to the assessment of taxes.

In the case of the *National Bank of Shawneetown v. Cook*, 77 Ill. 622, the assessment had been made and corrected by the state board of equalization, and then, without notice, the valuation was increased; and the court holds that "it is a proposition upon which there can be no doubt that the board *had no power* to make any change in the assessment without

notice to appellant." By this language the court is under-stood as holding no more than that it was simply error in the board to exercise the power without special notice to the persons to be affected thereby. That was the direction of the statute, and it is still the direction of the statute, and to disregard it is an error.

In the case of *Mix v. People* (72 Ill. 241), it was held that the levy must be made within the time prescribed by law, or it would be void. Was it necessary for the court to hold language so strong? Was it intended to decide anything more than that, as the law then existed, it was such an error as vitiated the levy of the tax? The supreme court afterward said: "It is also urged that the local taxes were not levied and returned to the clerk in time; and in support of the position, the case of *Mix v. People,* June term, 1874, is referred to as controlling this. That tax was levied under the law of 1872, whilst this is under the statute of 1873, which amends the prior law, see sec. 191, p. 890, Rev. Stat. 1874. That section declares that no error or informality in the proceedings of any of the officers connected with the assessment, levying or collecting of the taxes, not affecting the substantial justice of the tax itself, shall vitiate or in any manner affect the tax or the assessment thereof. This provision most effectually disposes of this question." *Buck v. The People,* 78 Ill. 560.

Then again it is held by the supreme court: "It is again urged that the certificates of the levy of the local municipal taxes were not filed in the time required by the statute. The answer to this is, as was said in *Buck v. The People, supra,* that it is cured by the 191st section of the Revenue Law. This cures all defects growing out of the failure to file the certificate on or before the day named in the 122d section." *Chiniquy v. The People,* 78 Ill. 570, 575.

In the section 122 referred to in the last-cited case, the provision is positive, and appears to be mandatory: "The proper authorities . . . collecting taxes . . . *shall* annually, on or before the second Tuesday in August, certify," etc., sec. 122, Rev. Stat. 878. This language is not less peremptory

than the language used in section 97, Rev. Stat. 873. "No complaint that another has been assessed too low shall be acted upon until the person so assessed or his agent shall be notified of such complaint, if a resident of the county," and yet it is held that since the adoption of sec. 191, Rev. Stat., the fact that the certificate is not filed in apt time is not such an error as will vitiate either the tax or the assessment. "The amendment introduced into the 191st section of the present revenue law has produced a radical change in-proceedings to recover judgment for delinquent taxes, and has overruled or modified most, if not all, of our previous decisions on the questions thus arising," *vide Chiniquy v. The People, supra.*

It will be borne in mind that in all these cases the people were seeking judgments, and must show jurisdiction.

In the cases now under consideration, those denying the jurisdiction are the complainants. They must make out their respective cases. The People in the cases cited must show that all the officers have complied substantially with the law, or they fail. In these cases now being considered, the complainants take upon themselves to show that the county board had not jurisdiction of the persons of the complainants; and this they must do by overcoming the presumption that a lawful tribunal, in the exercise of its duties, confines itself to whatever authority has been conferred upon it. This is especially true when it is conceded that the tribunal has jurisdiction of the subject-matter of the controversy.

Can it be questioned that the law might provide for the assessment, and review of the assessment, without notice to any one? But courts cannot render a judgment until there is a service of process, either actual or constructive. A judgment without service of some kind would be void and nugatory in every land. And yet, such a rule will not be applied to any tax or revenue matter.

The fact that a man must be taxed on all that he has and that he must be so taxed every year is known to and by every one. The assessor is directed to call on him or on his agent and assess his property. He knows that must be reported,

and he should take some notice of what is done in the premises thereafter. There is recognized no provision of sec. 97 that fails to require notice to the shareholders of stock not residing in Cook county. As opposed to this view the learned counsel refers to a New York case. School trustees levied a tax for school purposes. In making up the assessment roll the valuation of plaintiff's property was increased from the valuation thereof upon the town assessment roll. Before making the roll the trustees gave no notice. This assessment is an *original* assessment, made without any call upon the taxpayer: so that it might well be said there is no jurisdiction of his person until he has notice. In that case the learned chief justice reviews the authorities, and says "the authorities are not entirely in harmony and the precise question has not been passed upon by this court." The opinion concludes "that the weight of authority is that the omission to give the notice is a jurisdictional defect," *vide Jewell v. Van Steenburgh*, 58 N. Y. 85. These school trustees were allowed to take the assessment roll of the town assessors, and upon proper notice make such changes as to them might seem right; and then for school purposes the trustees could levy their tax. This was as truly an original assessment as that made by the town assessor. There was no original call so as to confer the jurisdiction. It is not clear that this authority is opposed to the suggestions herein made.

, A well-considered New Hampshire case is referred to, and judgments that are void or only voidable, are carefully discussed.

It is found by the court that tribunals which have jurisdiction of the subject-matter are not absolutely void by reason of any irregularity or illegality of the proceedings in general, but they are avoidable by proper and timely objections. *The State v. Richmond,* 26 N. H. 232.

If it still be claimed that there was no jurisdiction of the persons of the complainants until they respectively, or their agents, had notice, and that the county board could not review the assessment until such notice had been given, then it becomes an important inquiry how and to whom may such

notice be given? There can be no question but that if knowledge was brought home to any of the complainants, such as had the knowledge must be regarded as having had notice. "Actual notice exists where knowledge is actually brought home to the party to be affected by it" (*Bouvier's Law Dictionary*). It will be readily conceded that notice to an agent is notice to the principal. If doubted at all it must still be true in the case under consideration, since the statute requires notice to the party *or his agent*. Then, if knowledge is actually brought home to the agent of the complainants they must be regarded as having notice, even if they had, in point of fact, no knowledge that the complaint had been made to the county board that their shares of stock had been assessed too low. It is claimed by one of the counsel that notice to one of his clients, as president of the bank, was not notice to him personally. If knowledge of a fact be notice, and sometimes more than mere notice, then this position cannot be maintained. The statute does not say what kind of notice must be given. It simply requires notice. If any officer of a bank have knowledge that the complaint has been made, and he be the owner of any of the shares of stock, he cannot be allowed to say that he individually has no notice. He has more than notice. He has actual, positive knowledge that the complaint is made. In this view there can be no question.

In addition to such actual knowledge, it appears that some of the officers, who are complainants, actually appeared before the county board and opposed the complaint. A party appearing in a suit, with or without service, cannot afterward deny that he is properly before the court. A party appears and cross-examines a witness when giving a deposition; he cannot afterward say he did not have notice of the time and place of taking the deposition. These are familiar principles, admitted by all, and show conclusively that such as appeared before the county board, and resisted the review and correction of the assessment, will not be allowed to deny that they had notice of the complaint. What is notice to

those who had no such knowledge? What is notice to such as did not appear and oppose the correction?

The notice required is not, in every particular, like unto the process to be served on a party to bring him before the court. Original process cannot, as a general thing, be served on an agent. In this matter it is only necessary that the agent be notified. The revenue law deals with shares of stock and taxes them as the personal property of each shareholder, and such a tax is not a tax on the capital or property of the bank. *State, Farmers' National Bank v. Cook,* 32 N. J. L. 347; *Van Allen v. Nolan,* 3 Wallace, 573.

The case of *Farmer's Bank v. Cook, supra,* does not pass upon the question of service of notice otherwise than as by way of argument. Counsel refers to the case of *State v. Drake,* 33 N. J. L. 194. In that case it is correctly held that a notice under the tax law, served upon the tenant of the one complaining of the tax, is not a sufficient service. There is no reason in concluding that a man's tenant is his agent. It would be more reasonable to select a man's regular attorney or solicitor, and yet it will hardly be contended that such notice might be served on such attorney or solicitor. It is held that a notice to a bank cannot be served on a director having no share in the management of the matter about which the notice is given. The directors or trustees, when assembled for the transaction of business, are the agents of the corporation, and notice to them, when thus assembled, is notice to the corporation and binding upon their successors. But notice to an individual director, who has no duty to perform in relation to the subject-matter of the notice, is not a notice to the corporation. *Powles, etc., v. Page,* 3 Manning E. & S., 16; *The Fulton Bank v. The New York & Sharon Canal Co. et al.,* 4 Paige, 127.

This general doctrine will not be questioned, and yet in our state the statute provides that a process against a corporation may be served upon a "clerk," "cashier," "director," etc., if the president shall not be found in the county.

Again, it is held, and is certainly a fundamental principle,

that notice served on the agent, in order that it may bind the principal, must be served whilst the agent is acting within the scope of his agency. *Miller v. Illinois Central Railroad Co.*, 24 Barbour, 312.

In this connection, whilst laying down general principles, it will be seen that the provision is not that notice shall be given to the principal, and may be given by delivering a copy of a notice to an agent of such principal. The language of the statute is, "no complaint . . . shall be acted upon until the person assessed, *or his agent,* shall be notified." That is to say, the principal may be notified, or, if more convenient, the agent only may be notified.

It is claimed that the bank is the agent of the shareholders of the stock. It is the duty of the corporation, by its officers, to so direct and manage its affairs as to preserve and promote the highest interest of those interested therein. It is true the officers act directly for the bank, but the bank is an artificial person and can have no interest to preserve or promote, save and only the rights and interest of the share-holders. None others can have an interest in the management. The bank owns the property, the land, the money, all the assets, the privileges and franchises; but the officers are elected by the shareholders of the stock, and they are selected for the purpose of managing well the property of the bank. The shareholders measure the value of their shares of stock by the value of the property and franchises belonging to the bank. If these be under unskillful or improvident management the amount of dividends and the value of the shares of stock are diminished. If the shares are valued and assessed at a high rate by the assessor, their productive resources are diminished to that extent. There can be no person so well qualified to determine the real productive and market value of shares of stock as the officers who manage and control the bank for the interest and benefit of the shareholders. "When shares of capital stock have any value as an article of sale, it is because the purchaser supposes that the tangible and intangible property and the franchises are sufficient, if the affairs of the company were wound up, to pay all the debts

and pay a surplus in distribution to the shareholders equal to the per cent the purchaser gives." *Ottawa Glass Co. v. Mc-Caleb,* 9 Leg. News, 187;[1] *Porter, et al. v. Rockford, Rock Island & St. Louis Railroad Co.,* 76 Ill. 561.

It is self-evident that the value of an article of sale must depend largely upon the skill put forth in the management by the officers. It will be conceded that there is none so suitable to look after all matters pertaining to the assessment and taxing the shares of stock as the officers of the bank.

By the statute it is required that the bank shall keep the list of the names of the stockholders and of the number of shares held by each, and this list is for the inspection of the officers authorized to assess property for taxaton. From the bank the officer obtains the information that enables him to make and return a list to the clerk.

"*For the purpose of collecting the taxes* it shall be the duty of every *such bank,* or the managing officer or officers thereof, to retain so much of any dividend belonging to the stockholders as shall be necessary to pay any taxes levied upon the shares, until it shall appear that such taxes have been paid." Secs. 36, 37, 39 Revenue Law, Rev. Stat. 864.

It is the bank that gives the information to the officer and enables him to value the shares. It is the bank that is required to retain the dividend until the tax is paid, and it is the officer of the bank who is made liable if the dividend is not so retained. It is thus made quite clear that the statute makes the bank the agent of the stockholder for some purposes connected with the taxation of the shares of stock. In the case of *The Ottawa Glass Co. v. McCaleb,* 9 Leg. News, 188,[1] it is stated that "a corporation acts as *quasi* trustees in managing the business of the shareholders, and it is competent to the general assembly to require the whole taxes to be paid by the corporation, which corporation may then require repayment of the tax on shares to be refunded by the shareholders, either by deducting the amount from dividends or otherwise."

It has been held by the Supreme Court of the United States,

---

[1] 81 Ill. 556.—Ed.

and by the courts of New York, New Jersey and of this state, that under the provisions of the act of congress, the right of the states to tax all shares in the stock of the national banks clearly exists. *First National Bank of Mendota v. Smith et al.*, 65 Ill. 44, and the various authorities there cited.

It has been held in the same case (*supra*) that the bank is the trustee of the stockholders (p. 54), "and as such possesses the lawful control over the rights and interests of the *cestuis que trust*, much greater than that of a *mere agent* for the loan of money."

"Certificates of stock are not securities for money, in any sense, much less are they negotiable securities. They are simply the muniments and evidence of the holder's title to a given share in the property, and franchises of the corporation of which he is a member." *Mechanics' Bank v. New York Railroad Co.*, 3 Kern. 627; *First National Bank of Mendota v. Smith*, 65 Ill. 44, 55.

The banking corporation has a fixed locality where it must transact its business, and there wind up its affairs when it ceases to exist. It is the trustee of the stockholders who must come to its counter for their annual dividends, and their share of assets on final liquidation. 65 Ill. 56, *supra.*

It is thus seen that the stockholder has a title to a share in the property and franchise of the bank, that he is one of the owners of the bank, that this property and the franchises are managed and controlled by officers selected by the stockholders, that it is managed for the stockholders, that the bank is the trustee of the stockholders, that it is peculiarly and especially the duty of the bank to do and manage everything so as to make the shares of stock valuable, and so as to make them yield a dividend, and to guard against everything that may diminish the amount of dividends. The conclusion is inevitable that the bank must be the agent of the shareholder; it was only necessary to give notice to the bank. It has been seen that even original process could be served on the bank by serving on the president, cashier or director. Some of these notices were served on the president and others on the cashier. There was then sufficient notice to give jurisdiction of the

persons of the shareholders. Was there a sufficient complaint? is the next question requiring attention.

The provision of the statute is, a citizen may "complain that the property of another is assessed too low." It is not stated what averments the complaint shall contain, nor is it stated whether the complaint shall be oral or written. The complaints in these cases contain nothing more than that they complain that the personal property of the shareholders of the several banks (naming them) has been assessed too low. It is objected that this is too uncertain; that no person is named, and no traversable fact is complained of, and that it is vague and general.

"To complain of an assessment set opposite to each name on the assessment list, and to ask that evidence may be heard in each and every case and every name on the assessment list, or to the value of the property therein assessed, and to change the value as may seem just, and that the valuation may be reduced or raised as may seem just and equitable," has been held to be too general and too vague and uncertain. "Such complaint states no fact and is nugatory." There should be something complained of, and the party appearing should be informed of the matters which he may be required to meet. *People v. Reynolds,* 28 Cal. 107, 111, and *People v. Flint,* 39 Cal. 670, 673.

The California statute may not be like our statute in every particular, but no reason is seen why the Illinois courts should hold differently from the authorities cited.

In the complaint held to be nugatory there was no complaint of any valuation, or of any parcel of property or to any species of property. It was not complained that the valuation was too high or too low. No person or class of persons is described in the complaint. In these cases under consideration no one person, but a class of persons, is named; no one article of property is described. The averment is, the shares of stock of the shareholders of the particular bank is valued too low. The complaint and notice might have named each particular shareholder, and they might have designated the number of shares owned by each shareholder. But why?

The shareholders, if named each by himself, and if told the precise number of shares owned by each, would not be the wiser for the information. The description, "shareholders in a particular bank," though not the names of persons, is so definite and certain, that no other persons can be mistaken for them. There can be no question as to who is meant. It is the stock, it is the shares of stock, that is described as assessed "too low." This can be easily understood. This would be the case even though there was nothing else in the record. But all these shares of stock had been regularly assessed to each respective owner thereof, so that the complaint and notice meant that the shares of stock belonging to each of the respective shareholders had been valued "too low." The notice and complaint must be held sufficient.

Finding the notice and complaint sufficient, it remains to inquire what wrong or what injustice has been or is about to be done to either of the complainants?

It has frequently been held that a court of equity will not entertain a bill to restrain the collection of taxes, except in cases where it has been assessed upon property not subject to taxation, or where the tax is unauthorized by law, or where the property has been fraudulently assessed at too high a rate. This doctrine has been announced so frequently, in so many cases and under such varied circumstances, and under such varied forms of expression, that it cannot be necessary to cite authority. But, for fear that a different doctrine might be insisted upon, the general assembly has enacted sec. 191 of the revenue law. And now "No error or informality in the proceedings of any of the officers connected with the assessment, levying or collecting of the taxes, not affecting the *substantial justice of the tax* itself, shall vitiate or in any manner affect the tax or the assessment thereof." In none of these bills is it claimed that any injustice has been done. The property is clearly subject to taxation. The tax is unquestionably authorized by law. It is not in any one of the bills claimed that the property has been assessed at too high a rate. It is not shown or claimed that anything has been done that affects the substantial justice of the tax itself. It

is simply averred that the assessment made and returned by the assessor was increased, and that it should not have been so increased. It is not claimed that the present valuation amounts to more than one-third the actual cash market value of the stock. There is but one exception to this statement. The shareholders of the Union National Bank state that the bank has been taxed on its real estate, and that when the shares of stock were assessed the value of the real estate should have been deducted from the gross value of the stock. They claim that this deduction was made in the assessment of the stock of all the other banks where they owned real estate. But, unfortunately for the shareholders of the Union National Bank, they fail to show that any injustice is done.

If the value of the real estate be added to the assessed value of the stock, the aggregate value falls considerably below one-half the actual cash value of the stock. They simply show that others are assessed entirely too low, whilst they are not yet assessed as high as as they should be. The propriety of assessing any property below its actual value may well be questioned, if not designated as pernicious. If all the property in the county and state was assessed at its actual value, the grand total would be increased so much that the actual wealth and resources of the state would be known and would amount to such an enormous increase over the present assessments that the rate per cent of taxation might be much reduced.

The statute provides that personal property shall be valued at its fair cash value, and yet if this cash value is imposed in only one county or town, it would be oppressive to the people of such county or town. The rule, to be of advantage, should extend throughout the state.

In no one of these cases has it been shown that the property is made to bear more than its just burden of taxation, nor have the owners been debarred of any substantial rights secured by the law of the land. The tax on the property is just, and no valid reason is made to appear why the owners should not pay it. A careful examination of the cases presented for the consideration of the court fails to show any-

thing that affects the substantial justice of the tax itself, and until this is shown the court cannot grant the relief sought.

"The statutes unmistakably show that it was the legislative will that mere technical objections not affecting the justice of the tax itself should not be regarded." *Beers, et al. v. The People,* 83 Ill. 488; *Buck v. The People,* 78 Ill. 560, 566; *Chiniquy v. The People,* 78 Ill. 570, 572; *Purrington v. The People,* 79 Ill. 11.

The law imposing the taxes is in all its parts "uniform." It provides for the constitutional "valuation," and does not go counter to the law of congress.

The complainants fail to show that any act of injustice is about to be done to them. They do not show anything that affects the substantial justice of the tax they seek to enjoin.

The injunction asked for in each case is denied.