Glassford v. Dorsey et al.

## GEORGE C. GLASSFORD

### v.

## THOMAS B. DORSEY ET AL.

1. REVENUE LAW—INCREASING ASSESSMENT AFTER RETURN MADE.—As the law stood prior to 1873, an assessor had no right after having once made an assessment, to raise it, without notice to the party assessed, and if he did so it was fraudulent and void, and a bill in equity would lie to restrain the collection of a tax levied on it. Nor has he any such power under the present revenue law.

2. NOTICE OF INCREASE SHOULD BE GIVEN.—After an assessment has once been made a party has the right to rely upon it, and he ought not to be compelled to look after the matter further unless he receive notice from the proper authority of a motion to raise his assessment. The town or county board may lower it but cannot raise it without notice.

APPEAL from the Circuit Court of Tazewell county; the Hon. JOHN BURNS, Judge, presiding.

Mr. WM. DON MAUS, for appellant; contending that an asses-sor has no power to increase an assessment once made without notice, cited Cleghorn v. Postlewaite, 43 Ill. 428; McConkey

v. Smith, 73 Ill. 313; Darling v. Gunn, 50 Ill. 424; First Nat. Bank Shawneetown v. Cook et al. 77 Ill. 622.

No complaint that another's property has been assessed too low shall be acted upon without notice to the person assessed: Rev. Stat. 1877, 828.

All the cases decided by the Supreme Court under Sec. 191 of the revenue law since its amendment have been on application for judgment for delinquent taxes, and in none of them has the question or proof of *fraud* been made: Hess v. The People, 9 Chicago Legal News, 215; People v. Sherman, 83 Ill. 165; Beers v. The People, 83 Ill. 488.

A court of chancery has jurisdiction to restrain the collection of a tax on the ground of fraud; Cleghorn v. Postlewaite, 43 Ill. 428; McConkey v. Smith, 73 Ill. 313; Darling v. Gunn, 50 Ill. 424; First Nat. Bank Shawneetown v. Cook, 77 Ill. 622.

Mr. B. S. Prettyman, for appellee; that it was the duty of the assessor, on finding the property was assessed too low, to assess it at its fair value, cited Rev. Stat. 1874, 871; Gross' Stat. 1868, 573; Cleghorn v. Postlewaite, 43 Ill. 428; First Nat. Bank Shawneetown v. Cook, 77 Ill. 622.

Under the law of 1874 the assessor was not required to give notice increasing an assessment; and it was the duty of the assessed to apply to the board of review for a correction: Rev. Stat. 1874, 873.

An informality in assessment does not vitiate it, or the tax extended upon it: Rev. Stat. 1874, 904.

Unless something in defense to affect the substantial justice of the tax is shown, its collection will be enforced: Chiniquy v. The People, 78 Ill. 570; Purrington v. The People, 79 Ill. 11; Thatcher v. The People, 79 Ill. 597; Buck v. The People, 78 Ill. 560; Republic Ins. Co. v. Pollak, 75 Ill. 292.

Lacey, J. This was a bill in equity, filed by the appellant against the appellee, Dorsey, who was tax collector for the town of Pekin, Tazewell county, Illinois, to enjoin him from collecting a tax of $628.59, extended on the tax books of that town for the year 1877, and charged as personal property tax for the year 1875.

It appears that one Stout was assessor for Pekin town for the year 1875. That he called on appellant to assess his property, and gave him a blank statement, which was immediately filled out and returned to Stout, duly signed by appellant, and contained what appellant claimed to be all his personal property, amounting to some $1,100.

This list was received and accepted by Stout without objection, and the amount was by him entered on his books as the assessment of all the personal property of appellant, for the year 1875.

Appellant then left the State on a visit, and was absent until July 1st, A. D. 1875, when he returned to Pekin. The township board of review met on the 28th day of June, and adjourned on the 30th day of the same month, in the year 1875. On the 5th day of July, A. D. 1875, without any notice to appellant, the assessor, Stout, ordered his clerk to raise appellant's assessment $15,000, making his whole assessment $16,100 instead of $1,100. On the 12th day of July, the county board for revising assessments met, and no objection was then made by appellant to his assessment. But in January, A. D. 1876, the tax having been extended on the assessment so raised, and the collector's book put into the hands of the collector, appellant claims, and we think such claim is sustained by the proof, that he then discovered for the first time that his assessment had been raised, and that on the amount of the raised assessment there was an additional tax levied of $628.59.

At the February term of the board of supervisors following, appellant made complaint before the board of this increased assessment, and asked to have the erroneous tax remitted, which the board granted, and passed a resolution remitting the tax. When the taxes for year 1877 were extended, the county clerk extended this back tax of 1875 on personal property of $628.59 against appellant. When the books came into the hands of the collector, he proceeded to collect this tax; appellant paid all other taxes levied against him except this, and brought his suit in equity in the Tazewell Circuit Court, setting up the above facts, and alleging that the collector, Stout, fraudulently raised his assessment, and that the act of Stout in

raising his assessment in the manner in which he did, as well as the acts of Shertliff, the county clerk, and Dorsey, the collector, were fraudulent, unjust and revengeful.

He avers also that at no time in the year 1875 was he liable for assessment for more than the sum listed by him for that year; that he was ignorant of the fraudulent assessment for the year 1875 until in January of the year 1876.

Upon a hearing of the cause, the court below dismissed the bill, and assessed damages on the injunction bond. Appellant now brings the cause to this court, and assigns for error the action of the court below.

. It appears from all the testimony that appellant had listed all his property to Stout when he was called upon, and that some outside influence or some improper pressure had been brought to bear against Stout, which caused him improperly and without an honest belief that appellant was justly liable to be assessed an additional sum, to raise the assessment $15,000.

This was done in a secret manner and without notice to appellant.

Stout told M. D. Beecher at the time he, as a member of the committee raised by the board of supervisors to examine into this assessment, that he, Stout, had raised appellant's assessment $15,000 without giving appellant notice; that appellant ought not to pay the tax, because he, Stout, was forced into raising the assessment.

Appellant testified that Stout, at the time the $628.59 tax was first demanded of him, told appellant that he ought not to pay it; it was unjust, and he would not have raised it, but Kellogg had sued him as assessor.

We are aware that an effort was made to show that appellant did not give in to the assessor all his property, but that he held a large chattel mortgage on some cattle, which he should have listed; but we are satisfied that the amount of the chattel mortgage did not belong to appellant, but to another party, and that appellant was not liable to be assessed for it.

As the law stood prior to the year A. D. 1873, appellant had the unquestioned right to maintain this bill. An assessor had

no right after he had once made an assessment to raise it without notice to the party assessed, and if he did so it was fraudulent and void, and a bill in equity would lie to restrain the collection of the tax levied on it. Cleghorn v. Postlewaite, 43 Ill. page 428; McConkey v. Smith, 73 Ill. 313; Darling v. Gunn, 50 Ill. 424; First National Bank of Shawneetown v. Cook et al. 77 Ill. 622.

It is claimed by counsel for appellee that the statute has been so changed by the act of 1873, that the assessor may, after he has once made an assessment, change it at will without further notice to the party assessed. We do not think this position is tenable.

The statute now provides that the assessor shall assess in the manner following:

" He shall call at the office or place of doing business, or residence of each person required by this act to list property, and list his name, and shall require such person to make a correct statement of his taxable property, in accordance with the provisions of this act; and the person listing the property shall enter a true and correct statement of such property in the form prescribed by this act, which shall be signed and sworn to, to the extent required by this act, by the person listing the property, and delivered to the assessor, and the assessor shall thereupon assess the value of such property and enter the same in his books. Provided if any property is listed or assessed on or after the 1st day of July, and before the return of the assessor's books, the same shall be as legal and binding as if listed and assessed before that time." R. S. 1874, page 870, Sec. 78.

Sec. 79 provides for the assessor notifying the taxpayer (in case he is sick or absent when the assessor calls, after leaving the list), to make out his assessment by a day fixed.

Sec. 80 provides for taking testimony in case any person refuses to list as to the value of his property.

Sec. 83 provides: " In all cases of failure to obtain a statement of personal property from any cause, it shall be the duty of the assessor to ascertain the amount and value of such property, and assess the same as he believes to be the fair amount and value thereof."

Sec. 84 provides that the assessor shall when requested deliver to the person assessed a copy of the statement of the property hereinbefore required, showing the valuation of the assessor of the property so listed; which copy shall be signed by the assessor.

Sec. 86 provides that the town board of review shall correct assessments, etc., but that no plaint that another is assessed too low shall be acted upon until the person so assessed, or his agent, shall be notified of such plaint, if a resident of the county, and the same rule shall apply to the county board.

By sec. 88, it is provided that the failure to give such notice or hold said meeting shall not vitiate such assessment, except as to the excess of valuation or tax thereon shown to be unjustly made or levied.

It will appear by the above statutes that after the assessor has once made the assessment, he has no power to change or alter it, although by the former statute he had such power by giving the party assessed notice.

The statute requires him in case the party assessed demand it, to give him a certificate showing the assessment. Why do this if the assessor could turn around on the next instant and change the assessment? The power, even to the town and county board of review, is restricted so that they cannot raise the assessment of any party without notice, and if they do so the act is void so far as the excess over the original assessment is concerned.

The statute provides for the assessment of all property, but has carefully guarded and regulated the power of the assessor, which is an arbitrary one. He is required to give all residents an opportunity to list their property; but in case of their refusal after notice, or in case the assessor fails to obtain a statement of personal property for any cause, then it is his duty to ascertain the amount and value of such property, and assess the same as he believes to be the fair amount and value thereof.

In the case at bar the assessor had not failed to procure the amount and value of the appellant's property. He had procured a full list, which he had accepted without objection, and

had actually extended the assessment on the books.   Having done this, it was his duty to return it to the office of the county clerk.   If the assessment was not high enough, then it was the duty of the town board, firstly, and the county board, secondly, to raise the assessment after due notice to appellant.   It could not have been the intention of the legislature in passing the above statute to allow the assessor, after making an assessment in the manner pointed out by the statute, and after giving the party assessed a certificate of assessment, for he is entitled to it on request, to re-assess the party without notice and in a secret manner.   To hold thus would be to hold that a person who had been once assessed, and who had received his certificate of assessment, should be required to watch the assessor's books every day and every hour until the books passed out of his hands, and even after the first day of July, the time the book is by law required to be returned, to see if the assessor had not changed or raised his assessment secretly and without his knowledge.

We think after the assessment has once been made a party has the right to rely on it, and that he shall not be compelled to look after the matter further, unless he receives notice from the proper authority of a motion to raise his assessment.   The town or county board may lower it, but cannot raise it without notice.   Besides, we must from the evidence hold that this additional assessment of $15,000 was made arbitrarily and fraudulently.   It is argued by counsel that appellant left the county, so that notice could not have been served on him, and therefore no notice was required; but it is a sufficient answer to this that his assessment was not raised till some five days after his return; he having returned July 1st, and the assessment having been raised July 5th, by order of Stout, and even after the town board of review had met and adjourned.   This last named board could not have raised his assessment without notifying him, yet it is contended the assessor could; that the assessor had greater power than the board itself.   If we are only to look to the *substantial justice of the case*, as contended for by counsel for appellees, under section 191 R. S. 1874, chap. 120, we are constrained to find from the evidence that the

assessment of the $15,000 was not justified by the evidence.

Therefore the decree of the court below is reversed and the cause remanded, with instructions to the court below to make the injunction as to the $628.59 tax wrongfully levied perpetual.

Reversed and remanded.