## DANIEL H. TOLMAN

*v.*

## JULIUS S. SALOMON *et al.*

*Opinion filed June 19, 1901.*

1. TAXES—*tax-payer is entitled to notice of a re-assessment.* If a tax-payer makes out and delivers to the assessor a list of his taxable property, with the valuation thereof, *and such schedule and valuation are accepted by the assessor as correct,* they cannot afterward be altered or changed without notice to the tax-payer.

2. SAME—*assessor is not bound to accept tax-payer's valuation of property.* The assessor is not bound to accept the tax-payer's valuation of his property as correct, and if he does not accept it he is not required to give notice to the tax-payer of changes in valuation.

APPEAL from the Superior Court of Cook county; the Hon. A. H. CHETLAIN, Judge, presiding.

COX, HELDMAN & SHORTLE, for appellant.

JULIUS A. JOHNSON, County Attorney, and FRANK L. SHEPARD, Assistant County Attorney, for appellees.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Appellant filed his bill in the superior court of Cook county against appellees, the tax collectors of the towns of North Chicago and South Chicago, and Samuel B. Raymond, county treasurer of Cook county, praying for an injunction against the collection of taxes claimed to be due from appellant on his personal property in said towns for the year 1900. Appellees filed a general demurrer to the bill, and in open court waived all objections and causes of demurrer because of misjoinder of defendants, and submitted the demurrer upon the single question whether the bill stated equitable grounds for the relief prayed for. The court sustained the demurrer, and appellant standing by his bill, it was dismissed for want of equity.

The material facts stated in the bill and admitted by the demurrer are, that complainant, who resides in the town of North Chicago and has his office in the town of South Chicago, on April 16, 1900, made, signed and swore to a schedule of his personal property located in the town of North Chicago and a like schedule of his property located in the town of South Chicago. These schedules contained a complete statement of the personal property owned by him on April 1, 1900, in said towns, respectively, and in said schedules he gave a full fair cash value of the articles therein mentioned, as provided by the statute. The value of the property in the town of North Chicago, as stated by complainant, was $600, and of the property in the town of South Chicago $500. On said day he delivered the schedules to the board of assessors of Cook county, and the board afterward met on the third Monday of June, 1900, for the purpose of revising the assessments of personal property, and placed the value of complainant's property in the town of North Chicago at $20,000 and in the town of South Chicago at $5000, increasing the valuation above that given by complainant. No notice of this act was given to complainant, and he never knew that the valuation of his property had been increased above that given by him until the months of December, 1900, and January, 1901,—too late to apply to the board of review.

The law creates a board of assessors for counties of the population of Cook, and the board has the powers and is required to perform the duties of township assessors under the law. By section 17 of the act for the assessment of property the assessor is required to furnish to each person a printed blank schedule for his property, with a printed notice that the schedule must be filled out, sworn to and returned, and that such person is to give the full fair cash value of the articles mentioned in the schedule. Complainant complied with the notice and made return of his property with his estimate of the fair

cash value thereof. It has constantly been held that where a property owner so makes out and delivers to the assessor a list of his taxable property with the valuation thereof, and the schedule and valuation are accepted by the assessor as correct, they cannot afterward be altered or changed without first giving notice to the party assessed. (*Cleghorn* v. *Postelwaite,* 43 Ill. 428; *McConkey* v. *Smith,* 73 id. 313; *First Nat. Bank of Shawneetown* v. *Cook,* 77 id. 622; *Camp* v. *Simpson,* 118 id. 224; *Huling* v. *Ehrich,* 183 id. 315; *Ayers* v. *Widmayer,* 188 id. 121.) There can be nothing in the nature of a re-assessment without notice to the party affected. There is some argument about changes in the statute at different times, but the rule would be the same under any statute. Every property owner has a right to a hearing in such a case, and an assessor can not secretly re-assess such owner without giving him an opportunity to contest the justice of the change. (Cooley on Taxation, 266; Desty on Taxation, 596.) That rule is founded on the plainest principles of justice and is enforced by the guaranties of the constitution. The bill, however, in this case does not raise any question of re-assessment or an increase of assessment, and does not show that the valuations fixed by the complainant were ever accepted by any assessor or deputy or the board of assessors. A property owner has the right to give his estimate of the value of his property, but the law requires that the assessor shall thereupon assess the value of such property and enter the valuation in his books. The assessor is to determine and fix the fair cash value of all items of personal property. If he accepts and adopts the valuation of the property owner he cannot change it without notice to such owner; but, so far as appears, there was but one assessment, and complainant's valuation was never accepted, and there was no increase or modification of the value first fixed under the statute. The court was right in sustaining the demurrer.

The decree is affirmed.                *Decree affirmed.*