WILLIAM W. PRINDLE, Appellant, *vs.* S. L. CAMPBELL, Resp't.

APPEAL FROM THE DISTRICT COURT OF WABASHAW COUNTY.

The act of incorporation of the city of Wabashaw, approved March 20, 1858, *ch.* 5, *sec.* 10, provides that the city marshal, on receipt of the tax list, "shall give one week's notice in the official paper, or shall give ten days' notice thereof by posting up notices in three of the most public places in the city. Such notices shall specify that taxes on personal property shall be paid *within thirty days* from the first publication of said notice, or from the first day of posting the same, and taxes and assessments on real estate before the first day of August following, or the first Day of December following ; that if such taxes are not paid until after the first day of August, interest will be charged at the rate of three per cent. per month after said first day of August on all unpaid taxes, and that if paid before said first day of August, no interest will be charged, and that all taxes or assessments specified in the tax list upon which said taxes or assessments shall not be paid on or before the first day of December, shall be sold at a certain time and place to be therein specified, for the payment of such taxes or assessments, and the publication or posting of such notices shall be deemed a demand, and a neglect to pay the taxes and assessments within the time specified shall be deemed a refusal to pay the same." *Held* under this section, that the interest on taxes on real estate does not begin to accrue till the expiration of the notice prescribed in this section.

Where the taxes, interest and charges are of a greater amount than is legally due, and the land is sold to satisfy such amount, the sale is void.

Notice of the time and place of sale of delinquent lands for taxes, under this section, must be given one week or ten days, as the mode of notice may re-

Prindle v. Campbell.

quire, prior to the first of August preceding the sale, and the omission to give this notice invalidates the sale.

A notice of sale, which embraces all lands upon which taxes are assessed, and is not restricted to lands which may be delinquent, and designates no place of sale, is essentially defective.

Where a sale of lands for taxes is not commenced on the day specified in the notice of sale, the marshal has no authority to sell any of the lands at a subsequent time.

*Sec.* 20, of *chap.* 5 of the same act, which provides that "All the instructions and directions herein given for the assessing of lands and personal property, and the levying and collecting of taxes and assessments, shall be deemed only directory, and no error or informality in the proceedings of any of the officers entrusted with the same, not affecting the substantial justice of the tax itself, shall vitiate, or in anywise affect, the validity of the tax or assessment, or of the title conveyed under the sale for taxes under this chapter," does not embrace such errors and informalities as go to the jurisdiction of the officers charged with the performance of the duties imposed by the charter, or the validity of their acts, but only such as do not substantially affect the material steps in the proceedings.

The notice of sale required by the charter is a matter which materially affects the rights of parties; without it the law confers no power on the officer to sell the land for delinquent taxes, and the time prescribed by the statute is essential to its validity.

Points and authorities for Appellant.

I.—The tax deeds set up in the complaint are *prima facie* evidence of the validity of the taxes under which the same were executed, and of the facts recited in such deeds, as far as they affect the force or validity of the title conveyed by said deeds. *Charter of the City of Wabashaw, chap.* 5, secs. 19 *and* 20; 18 *Ohio Rep., p.* 400.

II.—It is not alleged in the answer that the errors and informalities complained of *do*, in any way, affect the substantial justice of the taxes, or that the Respondent was damaged by the same.

III.—Courts will not ordinarily set aside a tax deed on account of irregularities in the proceedings not affecting the merits, even where no special provision is made. *Weller vs. City of St. Paul, 5th Minn., p.* 105 *and* 106.

Points and authorities for Respondent.

I.—The tax deeds set up in the complaint of the Plaintiff, vest no

title to the land in dispute in the said Plaintiffs, on account of the following admitted errors occurring in the levy and collection of the taxes for the city of Wabashaw for the years 1858–59.

I.—The city charter provides that the common council shall annually appoint assessors, on or before the first Monday of March of each year.

For the year 1858, assessors were appointed July 3d of said year.

For the year 1859, they were appointed May 7.

As this charter did not become a law until March 20, 1858, it is evident no tax could be levied for that year.   *See chap.* 5, *sec.* 2, *p.* 17.

II.—It is admitted that the assessors, in listing the property to be assessed, did not call on the taxpayers for the purpose of examining the property to be assessed, or to ascertain the value thereof, as required by the general laws then in force.   *See old Statutes, p.* 77, *sec. 5.*   Neither did the common council define the duties of the assessors, nor make rules and regulations for their government, as required by the charter.   *Charter, chap.* 5, *sec.* 3, *p.* 18.

When the charter of a municipal corporation does not define the manner of assessing and collecting taxes, the general laws then in force govern.   *See Blackwell on Tax Titles, p.* 556.

III.—The common council extended the time for the collecting the tax each of said years.   *See Stipulations, No.* 13.

It may be laid down as a general rule that a valuation being essential in taxing property, the statutes must be strictly pursued, or the proceedings based upon it will be illegal and void. 3*d Mass.,* 429.

IV.—But one assessor signed the assessment roll for the tax of 1858.   Two assessors were appointed, and but one acted—a fatal defect.   If it is not necessary for two to act, it is not necessary to appoint but one, or if two are appointed, each may make a separate roll, and the council can adopt the one that pleases them best.

V.—For the year 1859 the city council levied a general and a specific tax. The general tax was levied June 13, 1859.

No authority is given by the charter to levy a special tax to pay for buildings purchased by the city, and if they have that authority, no sufficient notice for the collection of said tax could be given.  · Still we find the land claimed in the complaint sold for both the general and special tax at one and the same time, and a deed given on said sale.

This, the Defendant submits is a fatal defect. *Blackwell on Tax Titles,* 190, 191, 192.

The Plaintiffs rely on *sec.* 20, *p.* 22 *of Charter* to sustain their deeds. It is beyond the power of the Legislature to excuse in advance the non-performance of a required act by a ministerial officer, for it would strike down the rights of citizens, and make statutes meaningless. In each of the taxes mentioned herein, the ministerial officers have wholly ignored the provisions of the charter and of the general law in the assessing and collecting of the taxes. If this can be done, an agent of the law can set up his dictum in place of the law, and there is no necessity of legislative provisions.

It is the established doctrine of the courts, that to make a tax valid, the strictest compliance with the provisions of the law authorizing the assessment, levy and sale are essential, pre-requisite and imperative, and the special power granted by the statutes must be strictly pursued. *Blackwell on Tax Titles, pp.* 45, 46, 47, 55 *and* 57 ; *also,* 1*st Scammon Report,* 323 ; 2*d Comstock, p.* 70 ; 4 *Cranch,* 267.

John N. Murdock, Counsel for Appellant.

S. L. Campbell, Counsel for Respondent.

*By the Court*—McMillan, J.—This is an action of ejectment brought by the Plaintiff against the Defendant to recover the possession of Block No. 152 in the city of Wabashaw, according to the recorded plat thereof.

The case was submitted to the court below, upon a statement of facts agreed upon and settled by stipulation between the parties—the finding of the court was for the Defendant, and judgment for the Defendant was thereupon entered. The Plaintiff appealed from the judgment.

The case involves the validity of the tax sales in the city of Wabashaw for the years 1858 and 1859 respectively.

The facts as agreed upon by the parties, show a great many informalities and errors in the proceedings of the officers in reference to the taxes and sales of both years, some of which are fatal and others are not so. We will not consider all the objections urged to the validity of these taxes, but only a portion of those we deem fatal to each of the tax deeds under which the Plaintiff claims title to the land.

First, as to the taxes for 1858. It appears that the tax list for the year 1858 was delivered to the city marshal on the 27th of July, 1858, "that notices were posted on the 29th of July, 1858, by the city marshal, requiring taxes on personal property to be paid within thirty days from the date of said notice, and on real estate before the 1st of December, 1858, and that on such real estate taxes as were not paid by the first day of August, 1858, interest would be charged at three per cent. per month."

The act of incorporation of the city of Wabashaw, approved March 20, 1858, *ch.* 5, *sec.* 10, provides that the city marshal, on receipt of the tax list, "shall give one week's notice thereof in the official paper, or shall give ten days' notice thereof by posting up notices in three of the most public places in the city. Such notices shall specify that taxes on personal property shall be paid within thirty days from the first publication of said notice, or from the first day of posting the same, and taxes and assessments on real estate before the first day of August following, or the first day of December following; that if such taxes are not paid until after the first day of August, interest will be charged at the rate of three per cent. per month after said first day of August on all unpaid taxes, and that if paid before said first day of August, no interest will be charged, and that all taxes or assessments specified

in the tax list upon which said taxes or assessments shall not be paid on or before the first day of December, shall be sold at a certain time and place, to be therein specified, for the payment of such taxes or assessments, and the publication or posting of such notices shall be deemed a demand, and a neglect to pay the taxes and assessments within the time specified shall be deemed a refusal to pay the same."

Sec. 12, of the same chapter, provides that "on the day and at the place designated in the marshal's notice, he shall commence, by public auction, the sale of all tracts and lots of land or parts thereof, upon which the taxes or assessments shall remain unpaid, and continue the sale from day to-day until the whole of such tracts, lots or parts of lots are disposed of," &c.

The only provision for notice of the sale of lands for taxes is that required by *sec.* 10, above cited. The reasonable construction of this section as to the time of giving the notice is that it must be given at least one week in case of publication, and ten days when the notices are posted, prior to the first day of August. The tax payer is entitled to this notice, that he may avoid the payment of the high rate of interest charged on the taxes if they are not paid till after that time, and no interest can accrue until the notice is given. The sale of lands upon which taxes are unpaid is made not only for the taxes and other charges, but interest on the amount, at the rate specified, from August 1st. In this instance the notice was not given till the 29th of July; the interest could not begin to accrue until after the expiration of ten days, which would be some time subsequent to the first of August, and the amount for which the lands were sold, including the excess of interest, was for an amount greater than was legally due, and is therefore void. But the notice is essential, not only as affecting the interest, but the validity of the sale. The only notice of the sale required to be given is that given at the time of the reception of the tax list by the marshal. The time and place of the sale of delinquent lands is required to be specified in this notice. No particular description or specific reference to the lands to be sold would seem to be required, but they are included

in the general description of lands "upon which said taxes or assessments shall not be paid on or before the first day of December."

This is certainly a very summary mode of divesting a citizen of his title to real estate—more summary than is deemed necessary in the general laws for the collection of taxes in this State. The tax payer should at least have the extent of the notice, as to time, required by the law. We are of opinion that under the provisions of *sec*. 10, notice of the time and place of sale must be given one week or ten days, as the mode of notice may require, prior to the first of August preceding the sale, and that the omission to give this notice invalidates the sale. As the notice required was not given in this case, the sale for 1858 and all subsequent proceedings under it are void.

We come, therefore, to the sale for taxes of 1859. The facts with reference to this sale, so far as it is necessary for us to consider them, are as follows:

"The deed given on the delinquent tax sale for 1859 was for both general and special taxes, and the land was sold for the delinquent taxes for both the general and special taxes herein mentioned, on the 15th day of December, 1859, pursuant to notices of sale marked 'schedule B and D' respectively, and no other or different notices of the sale of said lands was given than those hereto annexed. The city marshal did not attempt to force collection on the general or special tax for said year until after the 12th day of December, 1859, for the personal property tax, nor offer for sale any of the real estate for delinquent taxes until after said 12th day of December, 1859."

A reference to the schedules shows that neither of these notices were given until after the first of August—the general tax notice being dated *December* 6, 1859, and the special tax notice being dated *October* 28, 1859. Neither, therefore, under the view we have taken, is sufficient in this respect. There are other defects in these notices and the sales under them. The general tax notice is essentially defective. It embraces all lands upon which taxes are assessed, and is not restricted to those which may be delinquent, and no *place* of sale is designated.

The general tax notice designates the 12th of December, and the special tax notice designates the 2d of December, at 9 o'clock A. M. as the time of the respective sales thereunder, yet it appears that the sale was not commenced on either day, nor until the 15th of December, 1859, at which time the sale was made for both the general and special taxes, and the deed given in pursuance thereof.

The sale not having been commenced on the days specified in the notices, the Marshal had no authority to sell any of the lands at a subsequent time; after the time designated for the sale each notice was *functus officio*. The defect is fatal to the proceedings, and extends to both the general and special tax sales for 1859.

The Plaintiff relies upon the following section of the charter as avoiding all these defects:

· "*Sec.* 20. All the instructions and directions herein given for the assessing of lands and personal property, and the levying and collecting of taxes and assessments shall be deemed only directory, and no error or informality in the proceedings of any of the officers entrusted with the same, not affecting the substantial justice of the tax itself, shall vitiate or in any wise affect the validity of the tax or assessment, or of the title conveyed under the sale for taxes under this chapter."

If the construction of this section, urged by the Plaintiff, be the true one, then every act directed by this statute to be done which does not affect the substantial justice of the tax itself, may be entirely omitted. This could not have been the intention of the Legislature in this provision. It is at variance with every principle of justice, with the general tenor of the law, as well as other direct provisions of the charter.

*Sec.* 11, of the same chapter, provides that "if such personal taxes shall not be paid or collected in consequence of the neglect or delay of the marshal, the common council may sue for and recover the amount thereof from the marshal and his sureties;" and *sec.* 18, among other things, provides that "should any tax or assessment upon any lot or parcel of land be set aside or declared void by reason of any defect or informality in the assessing, levying, selling or conveying the same or other matter, but

not affecting the equity or justice of the tax itself, the common council shall cause the tax or assessment so set aside or declared void to be relieved in such manner as they shall by ordinance direct; *Provided*, that if the defect was in the assessment the same shall be again assessed," &c.

It is evident from these sections that there were errors and irregularities which, in the contemplation of the Legislature, would be fatal to the proceedings, although they might not affect the equity or justice of the tax itself.

It is only such errors and informalities as do not substantially affect the assessment or levy of the tax, or the sale or conveyance of the land, or other material step in the proceedings, which are embraced within the section under consideration; and not such as go to the jurisdiction of the officers charged with the performance of the duties imposed by the charter, or the validity of their acts. The section, therefore, is little more, if any, than the enunciation of a rule which would exist without it. Such has been the view taken by this Court of a similar provision in the charter of the city of St. Paul. *Weller vs. The City of St. Paul*, 5 *Minn.*, 105–6.

The notice of sale required by the charter, in this instance, is a matter which materially affects the rights of parties; without it the law confers no power on the officer to sell the land for delinquent taxes, and the time prescribed by the statute is essential to its validity. If the officer may decrease the time of notice one week, he may decrease it any other length of time.

We are of opinion, therefore, that the sales of land for taxes for 1858 and 1859, under which the Plaintiff claims title, are fatally defective, and the conveyances to the Plaintiff, in pursuance of them, are void.

The judgment of the Court below is affirmed.