ELISHA BUCK

*v.*

THE PEOPLE *ex rel.* Charles P. Swigert.

1. TAXATION—*no defense that the taxes are high.* It is no defense to an application for judgment against delinquent lands, that the taxes are high, where there is no unfairness or injustice in the assessment, and there is no inequality in the taxes imposed.

2. SAME—*sufficiency of· proof of notice of applying for judgment.* An affidavit of a printer of a newspaper of the publication of the delinquent list and notice of applying for judgment, properly sworn to, which states the day when the publication was made, and the paper in which the list and notice were inserted, will be sufficient proof of publication to confer jurisdiction on the court to render judgment.

3. SAME—*description of lands for taxation by abbreviations.* The statute expressly authorizes the use of abbreviations in assessing property for taxation, and any description of property for the purposes of taxation, by which a qualified surveyor can locate and find the land, will be sufficient.

4. SAME—*objections not affecting objector.* A misdescription or defective description of a tract of land by an assessor, will not affect the taxes imposed on other tracts, and the law will not allow a party resisting judgment against his property for taxes, to raise an objection which does not apply to his property, but does to that of others, who do not object.

5. SAME—*objections to judgment must be signed.* Objections to the rendition of judgment against lands for taxes, being in the nature of a pleading, must be signed either by the party or by his attorney, or the court will be warranted in disregarding them.

6. SAME—*order for levy of county tax.* Where the finance committee of a board of supervisors reported that it would require a levy of three mills on the dollar for county purposes, and that it would require a levy of a like per cent to pay interest on railroad bonds, and the board ordered a sufficient sum to be levied to pay the interest on the bonds and the three mills on the dollar for county purposes: *Held,* that the order of the board, taken in connection with the report, meant a levy of three mills on the dollar to pay interest on the county railroad bonds.

7. SAME—*certificate of municipal taxes not filed in time, etc., does not invalidate.* Under section 191, R. S. 1874, title "Revenue," if the officers of municipal bodies do not return their certificate to the county clerk of the taxes to be levied, in the time prescribed, the defect will be cured.

8. So, if the persons making such certificate fail to describe themselves as officers, with precise accuracy, or do not use the full name of their corporate bodies, this statute will cure the defects. The case of *Mix* v. *The People,* June T. '74, was decided under a different statute.

9. SAME—*county equalization.* Where the board of supervisors, in equalizing the assessment of the township assessors, raised the aggregate valuation of all the towns a trifle over one-fourth of one per cent on the entire assessment: *Held,* that, as this might have been necessary and incidental to a proper equalization, it did not invalidate the taxes levied on such equalized valuation.

10. SAME—*presumption as to legality of assessment, etc.* It will be presumed that taxes are properly and legally assessed, and are legally and justly due, in the absence of proof to the contrary. The collector's list and report of delinquent lands in the manner prescribed by statute, entitles him to judgment, unless the tax-payer satisfactorily shows that the taxes have been paid, or some other legal defense going to the merits.

APPEAL from the County Court of Kankakee county; the Hon. C. R. STARR, Judge, presiding.

Mr. STEPHEN R. MOORE, for the appellants.

Mr. H. L. RICHARDSON, for the appellees.

36—78TH ILL.

562      BUCK *v.* THE PEOPLE *ex rel.*      [Sept. T.

Opinion of the Court.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was a proceeding by the treasurer, in the county court of Kankakee county, to obtain judgment against delinquent lands and town lots, and for their sale for the taxes for the year of 1874, and the back taxes for the year 1873. On the hearing of the objections filed, the court below overruled them, and rendered judgment. Thereupon the objector prosecutes this appeal, and urges various objections to the validity of the order of sale.

The objections relied upon are, first, that the notice and application, as published, failed to confer jurisdiction, either of the subject matter or of the persons against whose lands the taxes were assessed; that the various local taxes were not legally assessed; that the lands are not described with sufficient certainty; that the equalization by the board of supervisors raised the aggregate valuation of the property of the county; and that the county taxes were in excess of the per cent allowed by law, and the local taxes were not levied within the time prescribed by the statute.

The objector does not insist that he is required to pay more than his just proportion of the tax, or that property or funds not liable to be taxed, has been assessed; nor that he has paid his tax, or that there is any injustice in its imposition, but simply that some officer intrusted with its levy or collection has failed to comply with some statutory requirement. But it is fortunate for the State, and our school system, our municipal governments and our benevolent institutions, that the great mass of our people have a higher sense of justice, and a clearer perception of duty, and hence fail to attempt an escape from so just a burthen, and waive all mere technical objections, and pay the sum they have been rated by the proper officers.

Nor is it any defense, to say that taxes are high. The construction of municipal improvements almost everywhere, on credit, and at high rates of interest, compels the imposition

of heavy burthens to meet the cost, with current expenses.
Such improvements are made with a lavishness almost amount-
ing to recklessness.  And yet the officers of such bodies are
generally elected for the purpose, and the entire community
urge them on, or at least favor their construction.  None can
expect to have all of the benefits derived from such improve-
ments, without being heavily burthened with taxes.    To
avoid them, economy should take the place of extravagance.
The remedy is in the hands of the tax-payers.  When they
shall urge an economical administration of public affairs, and
elect officers to carry out their views, then, and not till then,
will the burthens of taxation be mitigated.  The burthens
are self-imposed, and fairness demands that the tax-payers
should meet and discharge the taxes as they do other honest
obligations incurred in business.  All take a pride in the
improvements made by their municipalities, and enjoy their
benefits, and they should not be heard to say that they are
warranted in evading paying for the same, or in imposing
their portion of the burthens on others, in whole or in part.
Stern justice demands that the creditors of the State, and of
municipalities, teachers of schools, workmen in erecting
school houses, contractors who improve the streets and beau-
tify and adorn our cities, villages and towns, should be paid
for the money loaned and labor expended for these purposes.

All of the objections in this case are merely technical, and
devoid of merit.   There is no pretense that the property of
objectors is not liable to be rated, nor that they are unfairly
or unjustly assessed; nor do they claim that a greater rate is
imposed upon them than on other citizens of the district; nor
that the amount levied is not indispensable to the county and
township governments, the keeping of roads and bridges in
repair, and for the maintenance of schools, and the preserva-
tion of order in the villages of the county.   These are all not
only legal, but indispensable purposes, and no just reason is
seen why the objectors should not pay their fair and just pro-
portion of these burthens, so far as they are imposed upon the

property in the municipality in which they reside. It would not be altogether fair, to suppose they desired to escape these burthens, when they enjoy all the benefits derived from their expenditures, and to unjustly impose them on others who enjoy no more, if so much, of the benefits flowing from the maintenance of these institutions. But, without regard to the motive which actuates them, they have an undoubted legal right to have the law as fairly and strictly applied to the questions they present, as in any other case.

Were, then, the notice and list, as published, sufficient to give jurisdiction to the court to hear and determine whether the order of sale should be granted? The publication of the delinquent list and notice appears to have been made on the 22d day of April, 1875. This is shown by the affidavit of the printer, sworn to before the county clerk on the 11th day of May, 1875. The affidavit has in the caption a proper venue, is signed by the publisher, and the clerk certifies that it was subscribed and sworn to before him on the day he names, and it was filed on the same day. If this affidavit is not sufficient in form, we apprehend that few would be found to stand the test. It states the day when the publication was made, the paper in which the list and notice were inserted, and, so far as we can see, fully complies with the requirements of the law, and must be held sufficient.

It is next insisted that the description of some of the lands is indefinite and uncertain, and therefore insufficient. We fail to perceive the force of the objection. The 184th section of R. S. 1874, p. 888, allows the use of abbreviations in assessing lands for taxes, and in advertising them when delinquent, and for an order of sale. We are unable to say that we can not comprehend the meaning of the contractions used, nor that any intelligent person, to say nothing of a qualified surveyor, could not as readily locate these tracts as he could lands by the usual descriptions employed in deeds of conveyance. We are wholly unable to appreciate the objection. But if it could be admitted to have any force under any circum-

stances, the objection does not apply, nor is it pretended that it applies to appellant's lands, and we can scarcely suppose that it will be seriously contended that, because the assessor were to misdescribe, or defectively describe, one tract of land, it would vitiate the entire tax levied in the county and State, and such would be the inevitable result of the doctrine contended for, if it were allowed. As well repeal the revenue law, as to give force to such objections. It would be more just to do so, than leave the burthen on those not able to litigate the payment of their taxes, and afford immunity to those that are.

Again, this objection does not apply to appellant's lands, and why should he intermeddle for the purpose of preventing the collection of the public revenue? His neighbors, so far as we can see, have not empowered him to interfere. If they choose to pay their taxes, how can it concern him or his interest? He only has a legal right to resist the payment of taxes imposed on his own property, leaving others to pay or resist, as their sense of duty and right may dictate.

The next objection is, that there were three mills levied for county purposes, and that it was intended to exclude all other levies, and that the three mills levied to pay interest on county bonds for railroad purposes, is unauthorized and void, as it was never levied.

As to all of these objections, it would be sufficient to say that, as given in the transcript, the long list of objections filed do not purport to be signed by the tax-payers, their attorneys, or, in fact, by any other person. All know that all pleadings or matters in the nature of pleadings, should be signed, either by the party or his attorney. And when such technical objections are being urged, we would expect that the uniform rules of practice, which have always obtained, would be observed. The court below was therefore fully warranted in overruling these objections on this ground, and in rendering judgment for the sale of the lands, as asked by the treasurer.

But if it could be conceded that the objections might be considered, we fail to see that they have any force. The finance committee reported that it would require a levy of three mills on the dollar for county purposes, and that was specifically levied. They also reported that it would require a levy of three mills on the dollar to pay the interest on the railroad bonds, and the board, by resolution, ordered a sufficient sum to be levied, to pay the interest on the bonds. Can any one doubt that the board, in view of this report, intended to and did levy the three mills necessary, as reported, for the payment of that interest. That such was their manifest intention, we presume no one can doubt. It would be difficult to make it plainer, although the sum could have been stated in the resolution, and thus rendered a reference to the report unnecessary. But that is all that it would have accomplished.

It is also urged that the local taxes were not levied and returned to the clerk in time; and in support of the position, the case of *Mix* v. *The People,* June T. '74, is referred to, as controlling this. That tax was levied under the law of 1872, whilst this is under the statute of 1873, which amends the prior law. See section 191, p. 890, R. S. 1874. That section declares that "no error or informality in the proceedings of any of the officers connected with the assessment, levying or collecting of the taxes, not affecting the substantial justice of the tax itself, shall vitiate or in any manner affect the tax or the assessment thereof." This provision most effectually disposes of this objection.

Suppose the officers of these municipal bodies did not return the certificate of the levy in the time prescribed, still this section cures the defect. Or suppose they did not describe themselves as officers, with precise accuracy, or they did not use the full name of their corporate bodies, such defects are cured.

It is not denied that the persons making the levy were the real persons holding the offices, or that they were not fully empowered to levy the tax. And if they had the power, if

the objections urged were true, still they do not go to the justice of the tax itself, but they simply raise the most technical objections, which are devoid of all merit, and such as courts of justice never allow, unless compelled by positive enactment.

As to the local tax exceeding the per cent allowed to be levied, we fail to see that such is true. We find no evidence of the fact in the record, nor have we been referred to any. Hence we dismiss that question without further discussion.

This, then, disposes of all questions but the one urged against the equalization of the town assessments by the county board. It is urged that the equalization raised the valuation on the property above the amount assessed by the town officers. The law governing such cases provides that, "Neither shall it increase the aggregate valuation of all the towns or districts, except in such an amount as may be actually necessary and incidental to a proper and just equalization." It is true that the aggregate of the assessment was raised, but only a trifle over one-fourth of one per cent on the entire assessment. This may have been altogether necessary and incidental to a proper and just equalization. We are not able to say it was not necessary. It may be that an expert arithmetician could have approximated nearer to the first assessment, had he taken time and the requisite amount of pains. But we fail to perceive any force in this objection.

The law having provided for the assessment by the township officer, having given an appeal to the board of review, and required the clerk to extend the tax on the collector's list, it presumes that the taxes are properly assessed, and are legally and justly due. And the return of the collector to the county treasurer, of delinquent lands, rebuts the presumption that they have been paid. His return may be likened to an execution returned "no property found," by a sheriff. And the same is true of the treasurer's return to the court. If the presumption exists that the taxes are due when the collector's books are completed, and they are handed to him, what sub-

sequently transpires to rebut the presumption? Not the returns of the officers charged with the collection of the taxes. Nor does anything else occur to us that can possibly have that effect. The treasurer has only to present his corrected list to the court, in the manner prescribed by the statute, to be entitled to judgment, unless the tax-payer can satisfactorily show that they have been paid, or some other legal defense.

That has not been done in this case, and the judgment of the court below must be affirmed.

*Judgment affirmed.*