# THE RIVERSIDE COMPANY

*v.*

## WILLIAM A. HOWELL.

*Filed at Mt. Vernon March 24, 1885.*

1.  MUNICIPAL TAXATION—*prerequisites to its validity.* The power given to city councils, and boards of trustees in villages, by the general Incorporation act, to levy taxes, is subject to the restriction that such councils or boards shall ascertain the total amount of appropriations legally made, and that they shall, by ordinance, levy and assess such amount so ascertained. The act requires the annual appropriations to be first made, by ordinance, within the first quarter of the fiscal year, duly published, and their amount to be ascertained, and then that the levy and assessment shall be made, by ordinance, for the amount. These requirements being for the protection of the citizen, are not directory, merely, but mandatory. The power of the taxing authority is limited by the manner and conditions prescribed for its exercise.

2.  The prerequisite of an appropriation ordinance is a limitation upon the power of a city council to levy a corporate tax, and a failure to pass such an ordinance is not a merely formal defect, and so is not cured by section 191 of the Revenue law, but renders the whole tax illegal. A strict compliance with this requirement is necessary to guard against the abuse of the taxing power conferred.

3.  TAX TITLE—*in case a part of the tax is illegal and the residue was legally assessed—effect upon the validity of a sale for such taxes.* Where a part of a tax for which a sale of real estate is made, is illegal, the sale will be void. This is so when judgment is rendered by default, and the owner of the land does not appear and resist judgment. So when the city taxes for certain years against lots are illegal, for want of an appropriation ordinance before their levy, and they are included in the judgment with other legal taxes, no title will pass by the sale under such judgment.

4.  SAME—*judgment by default for taxes—upon what questions conclusive.* A judgment against land by default for delinquent taxes, is not conclusive against the owner as to the legality of all the taxes included in the judgment, and he may show that a part of the tax is illegal, and thus defeat the sale in a collateral proceeding, as, in ejectment to recover under the tax deed. Such a judgment is to be distinguished from a judgment confirming special assessments, which is conclusive upon the land owner.

APPEAL from the Circuit Court of Gallatin county; the Hon. WILLIAM C. JONES, Judge, presiding.

Mr. E. B. GREEN, and Mr. CARL ROEDEL, for the appellant:

Where a part of a tax for which a sale of real estate is made, is illegal, the sale is void, and no title passes. *McLaughlin* v. *Thompson*, 55 Ill. 249; *Kemper* v. *McClelland*, 19 Ohio, 308; *Gamble* v. *Witty*, 55 Miss. 26; *Dogan* v. *Griffin*, 51 id. 780.

Section 89, article 7, of the Revised Statutes of 1874, relating to cities, etc., requires the passage of the annual appropriation ordinance during the first quarter of each fiscal year, in which shall be appropriated such sum or sums of money as may be deemed necessary to defray all expenses and liabilities of the corporation, specifying the objects and purposes of each appropriation, and the amount thereof. Section 64 requires such ordinance to be published within one month after its passage. Section 111 authorizes the city council, on or before the second Tuesday in September (August) in each year, to ascertain the total amount of appropriations for all corporate purposes, legally made, and, by ordinance, levy and assess such amount, etc. A certified copy of such ordinance is to be filed with the county clerk.

The record of the ordinance levying taxes for 1875 fails to show that the yeas and nays were taken upon its passage, as required by section 41 of the Revised Statutes. This disregard of the provision of the statute renders the assessment of city taxes in 1875 void. *Steckert* v. *City of East Saginaw*, 22 Mich. 104; *Spangler* v. *Jacoby*, 14 Ill. 297; 1 Dillon on Mun. Corp. (3d ed.) 303.

The failure to pass the appropriation ordinances in 1875 and 1876 is also fatal. The power to levy taxes was limited to the amount of appropriations legally made. The donee of the power should be held to a strict execution of authority, because of the liability of the power to abuse. Cooley on Taxation, 212.

All statutes which, expressly or by implication, limit the amount of taxes which may be levied, are mandatory. Cooley on Taxation, 295; *French* v. *Edwards*, 13 Wall. 507.

The statute declares that all ordinances involving an appropriation of money, shall be published. This makes it mandatory. Cooley on Taxation, 218.

These omissions are not merely formal, and cured by section 191 of the Revenue act. . *People* v. *Miller,* 74 Ill. 384; *Hamilton* v. *Fond Du Lac,* 25 Wis. 490; *Prindle* v. *Campbell,* 9 Minn. 212.

Mr. R. W. TOWNSEND, and Mr. T. M. ECKLEY, for the appellee:

The judgment of the county court is conclusive as to all matters that could and ought to have been passed upon in rendering it. If it included too much taxes, or illegal taxes, it was but an error to be taken advantage of only by appeal or writ of error. *Keeve* v. *Kennedy,* 43 Cal. 653; *Hahn* v. *Kelley,* 34 id. 391; *Murdock* v. *DeVries,* 37 id. 528; *Mayo* v. *Foley,* 40 id. 283; Blackwell on Tax Titles, 221; *Moore* v. *Wayman,* 107 Ill. 192; *Gage* v. *Parker,* 103 id. 535; *People* v. *Brislin,* 80 id. 423; *Lehmer* v. *People,* id. 601; *Prout* v. *People,* 83 id. 154; *Railway Co.* v. *People,* id. 463; *Andrews* v. *People,* id. 529; *Schertz* v. *People,* 105 id. 32; *Blake* v. *People,* 109 id. 504; *Ward* v. *Farwell,* 97 id. 619; *Monroe* v. *People,* 102 id. 409; *Fortman* v. *Ruggles,* 58 id. 208; *Mix* v. *People,* 106 id. 425; *People* v. *Smith,* 94 id. 226.

The proof fails to show that the appropriation ordinances have not been passed, and it is not necessary that the book of ordinances should show the yeas and nays were taken.

It will be presumed that was done which ought to have been done, until the contrary is shown. *Lattin* v. *Smith,* Breese, 362.

But if no appropriation ordinance was passed, it could not affect the tax title. It does not go to the substantial justice of the tax, and the omission is cured by section 191 of the Revenue act. *Raley* v. *Guinn,* 76 Mo. 273; *Mills* v. *Gleason,* 11 Wis. 497.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This was an action of ejectment, for the recovery of a part of lots 1143 and 1144, in Shawneetown. Verdict and judgment were for the defendant, and the plaintiff appealed.

The defendant's claim of title was under a tax deed, and the question presented for determination is upon the validity of such tax deed.

In 1875, lot 1143 *entire*, and lot 1144 *entire*, were separately listed to Henry O. Doeker, and various taxes were extended against them on the tax books of 1875. These taxes not being paid, the lots were returned as delinquent, in 1876, and in October of that year lot 1143 *entire* was forfeited to the State for $321.33, and lot 1144 *entire* for $608.88. In 1876, "E. pt. lot 1143," and "E. pt. lot 1144," were listed to the Riverside Company, the plaintiff. Against "E. pt. lot 1143" were extended, on the collector's books, city tax of Shawneetown for 1876, $54.41, and back tax and interest for 1875, $352.48, being the total tax charged on lot 1143 *entire*, for 1875, with interest. Against "E. pt. lot 1144" were extended, on books of that year, (1876,) city tax, $163.23, and back tax and interest for 1875, $663.83, being the total tax charged on lot 1144 *entire*, for 1875, with interest. These taxes not being paid, the said parts of the lots were returned as delinquent, in 1877, and there was a judgment against and sale of "E. pt. lot 1143," and "E. pt. lot 1144," for such taxes. The tax deed is under this sale. The taxes for which the tax sale was made, embraced the city taxes of Shawneetown for the years 1875 and 1876.

It is objected to these city taxes that they were illegal and void because there had been no appropriation bill or ordinance passed by the city council, as required by the statute. The city of Shawneetown became organized under the general law of this State for the incorporation of cities and villages, on May 23, 1874. The fiscal year commenced on the third

Tuesday of April.	(Rev. Stat. 1874, chap. 24, sec. 48, p. 216; sec. 88, p. 227.)	Section 2, of article 7, of that law, (Rev. Stat. 1874, p. 227,) provides: "The city council of cities * * * shall, within the first quarter of each fiscal year, pass an ordinance, to be termed the annual appropriation bill, in which such corporate authorities may appropriate such sum or sums of money as may be deemed necessary to defray all necessary expenses and liabilities of such corporation, and in such ordinance shall specify the objects and purposes for which such appropriations are made, and the amount appropriated for each object or purpose.	No further appropriations shall be made at any other time within such fiscal year, unless the proposition to make each appropriation has been first sanctioned by a majority of the legal voters of such city, either by a petition signed by them, or at a general or special election, duly called therefor."	Section 3, article 5, page 223, provides that "all ordinances * * * making any appropriation, shall, within one month after they are passed, be published at least once, in a newspaper published in the city," etc.	Section 90, page 227, provides that neither the city council nor the board of trustees shall add to corporation expenditures in any one year, anything over and above the amount provided for in the annual appropriation bill of that year, except that by a two-thirds vote of the city council or board of trustees any improvement may be ordered the necessity of which is caused by any casualty or accident happening after such annual appropriation is made.	Section 1, article 8, page 231, provides: "The city council * * * may assess and collect taxes for corporate purposes, in the following manner: The city council * * * shall, on or before the second Tuesday in September (August) in each year, ascertain the total amount of appropriations for all corporate purposes, legally made, and to be collected from the tax levy of that fiscal year, and, by ordinance, levy and assess such amount, so ascertained, upon the real and personal property within

the city,   *   *   *   subject to taxation, as the same is assessed for State and county purposes," etc.

It will thus be seen that there is here, in the interest of the tax-payer, most careful provision made against extravagance of expenditure and abuse of the power of taxation.   There is to be passed, within the first quarter of each fiscal year, the annual appropriation bill, wherein is to be appropriated such money as may be deemed necessary for all expenses and liabilities of the corporation, specifying the objects and purposes of the appropriations, and the amount for each object and purpose, which is to be published; and no further appropriation shall be made at any other time within the fiscal year, except upon the sanction of a majority of the legal voters of the municipality.   There is to be no addition to expenditures, in any one year, of anything over and above the amount of the annual appropriation bill, except in a specified contingency.   The power given to the city council to levy taxes is with a restriction as to the manner in which the power is to be exercised,—that the city council shall ascertain the total amount of appropriations legally made, and, by ordinance, levy and assess such amount so ascertained.   The act requires the annual appropriations to be first made within the first quarter of the fiscal year, and their amount to be ascertained, and then that the levy and assessment should be made, by ordinance, for the amount.   These requirements of the statute we regard as for the protection of the citizen, and not directory, but mandatory.   The power of the taxing authority, in such a case, is limited by the manner and conditions prescribed for its exercise.   (*French* v. *Edwards,* 13 Wall. 507.) The donee of such power should be held to a strict execution of the authority, because of the liability of the power to abuse. (Cooley on Taxation, 212.)   We view the requisite of the appropriation ordinance as a limitation upon the power of the city council to levy the tax.   The failure to pass such ordinance is not a mere formal defect, and so is not cured by

section 191 of the Revenue law, (Rev. Stat. 1874, p. 890,) that "no error or informality in the proceedings of any of the officers connected with the assessment, levying or collecting of the taxes, not affecting the substantial justice of the tax itself, shall vitiate or in any manner affect the tax or the assessment thereof." (See *The People* v. *Otis*, 74 Ill. 384; *The People* v. *Lee*, 112 id. 113.) The want of an appropriation ordinance we look upon as a defect in the proceedings which makes the city tax illegal,—which surely affects the substantial justice of the tax. See Cooley's Const. Lim. 520; *Prindle* v. *Campbell*, 9 Minn. 212.

In *Wilmerton* v. *Phillips*, 103 Ill. 78, we said: "Purchasers at tax sales, while availing themselves of the opportunity of obtaining highly remunerative profits on small investments, are bound to know, at their peril, when purchasing at a tax sale, that the supposed delinquent is in truth and in fact a delinquent,—that he has been lawfully assessed, and has failed to make payment."

Some question is made as to the sufficiency of the proof that there was no appropriation ordinance passed. The testimony of the city clerk, who produced the ordinance record and the journal of the city council, was, in addition to the showing of the books, that no appropriation bill or ordinance was passed by the city council in either of the years 1875 or 1876. The proof is satisfactory to us that there was no such ordinance passed. We therefore hold the city taxes for the years 1875 and 1876 to be invalid, and that therefore the tax sale was void, and no title passed under it. The authorities are to the effect that when a part of the tax for which a sale of real estate is made, is illegal, the sale is void. *McLaughlin* v. *Thompson*, 55 Ill. 249; *Kemper* v. *McClelland's Lessee*, 19 Ohio, 308; *Gamble* v. *Witty*, 55 Miss. 26; Cooley on Taxation, 295, 296; *Hardenburgh* v. *Kidd*, 10 Cal. 402.

The tax sale being adjudged void and the tax deed invalid, upon the foregoing ground, it is unnecessary to consider

other objections which have been taken to the validity of the tax deed.

It is insisted that the tax judgment should be held conclusive against the objection which has been considered, and not subject to attack in this collateral proceeding, and we are asked to review and change our former holding to the contrary, where the tax judgment is by default, in the cases of *Graceland Cemetery Co.* v. *The People*, 92 Ill. 619, *Belleville Nail Co.* v. *The People*, 98 id. 399, *Gage* v. *Bailey*, 102 id. 12, and *Stamposki* v. *Stanley*, 109 id. 210, supposed by counsel to be in conflict with the line of decisions in *The People* v. *Brislin*, 80 Ill. 423, *Lehmer* v. *The People*, id. 601, *Prout* v. *The People*, 83 id. 154, *Chicago and Northwestern Ry. Co.* v. *The People*, id. 467, *Andrews* v. *The People*, id. 529, and *Gage* v. *Parker*, 103 id. 535. The case of *The People* v. *Brislin*, which the others followed, was one of the confirmation of a special assessment for park purposes. Not one of these cases referred to arose upon a judgment ordering sale of land for taxes, but they all related to the conclusiveness of confirmations of special assessments made under either section 3, chapter 105, of the Revised Statutes of 1874, entitled "Parks," or article 9, chapter 24, of the Revised Statutes of 1874, entitled "Cities, Villages and Towns." These confirmations of the assessments under section 3 of chapter 105, are in the circuit court, and are expressly declared by the act to be conclusive; and under the 9th article of the City and Village law, they are made in the county court after full and proper notice of the proceedings to the owner of the property. Such confirmations of assessments are, in our opinion, to be viewed differently from a judgment to sell real property for the taxes due thereon. In carrying out the powers given cities, etc., by section 9, of article 9, of the constitution, of making local improvements by special assessments on contiguous property, these confirmations of the assessments may be regarded like that of the valuation of property by the proper officer in ordi-

nary cases of assessment, and if the property owner fails to make his objections in the proper place, and the assessment is confirmed, then he may well not be permitted to go behind the confirmation in urging objections, when proceeding is taken for enforcing the payment of such special assessments. In the decision against the conclusive effect of tax judgments by default, somewhat of stress was laid upon the recognition by the statute, itself, of such judgments not having the conclusiveness of ordinary judgments by default. This consideration could not apply in the special assessment cases.

We see no sufficient reason for changing our former holding upon this point, as to a judgment by default in a tax sale proceeding not being conclusive, and we adhere thereto.

The judgment of the court below will be reversed, and the cause remanded for further proceedings.

*Judgment reversed.*

Mr. JUSTICE CRAIG, dissenting:

I do not concur with the majority of the court in the decision of this case, for the following reasons:

It is claimed that the judgment is void because it was rendered in part for city taxes of the city of Shawneetown, and the city council failed to pass an appropriation ordinance in the years 1875 and 1876, as required by law. I do not concur in this view. It is not entirely clear, from the evidence introduced on this branch of the case, that the city council failed to pass an appropriation ordinance within the first fiscal quarter, as provided by the statute, for these years; but, conceding the fact to be sufficiently proven, is the judgment void when called in question collaterally, as here? The annual election in cities and towns organized under the general Incorporation law, is required to be held on the third Tuesday of April, in each year. The fiscal quarter in such cities, unless otherwise provided by ordinance, shall commence at the time provided for the annual election. Section 89, of

chapter 24, of the Revised Statutes, provides that the city council shall, within the first quarter of the fiscal year, by ordinance, appropriate such sums as may be necessary to defray all necessary expenses and liabilities of such corporation, which ordinance shall specify the objects and purposes for which such appropriations are made, and the amount appropriated for each purpose, and no further appropriation shall be made during the fiscal year unless authorized by a majority of the legal voters of the city, by vote or petition. This section of the statute, as its reading plainly shows, has nothing whatever to do with the levy of city taxes by the corporate authorities. The power under which a levy may be made is conferred by section 111, which declares: "The city council * * * may assess and collect taxes for corporate purposes, in the following manner: The city council * * * shall, on or before the second Tuesday in September (August) in each year, ascertain the total amount of appropriations for all corporate purposes, legally made, and to be collected from the tax levy of that fiscal year, and, by ordinance, levy and assess such amount, so ascertained, upon the real and personal property within the city, * * * subject to taxation, as the same is assessed for State and county purposes. * * * A certified copy of such ordinance shall be filed with the proper clerk of said county," etc. The levy in the years 1875 and 1876 was made in conformity to this requirement of the statute.

But it is argued, as the city council failed to pass an appropriation ordinance during the first quarter of the fiscal year, the tax was illegal and the judgment void. Had the failure of the city council to pass an appropriation ordinance increased the taxes of the property owner, or enlarged the burdens of taxation, or rendered the taxes unequal or unjust, we can see a good reason why the failure to pass such an ordinance ought, in justice, to render the tax levy and judgment illegal and void. But such was not the case. So far as

appears, not a single tax-payer was in the least injured by the failure of the city council to discharge a duty imposed by statute.    The purpose of section 89 was not so much for the protection.of individual rights, as it was to guard the rights of the public.    The protection of public interests was aimed at in imposing this official duty upon the city council.    It was doubtless intended as a limitation upon the expenditure of the public money, without regard, particularly, to the levy and collection of taxes.    As to the effect of a disregard of a requirement of this character, in Cooley on Constitutional Limitations, 520, in note 2, will be found the following:    "It appears to us that where the requirement of the law which has failed of observance was one which had regard simply to the due and orderly conduct of the proceedings, or to the protection of the public interest as against the officer, so that to the taxpayer it is immaterial whether it was complied with or not, a failure to comply ought not to be recognized as a foundation for complaint by him.    But those safeguards which the legislature has thrown around the estates of citizens, to protect them against unequal, unjust and extortionate taxation, the courts are not at liberty to do away with by declaring them non-essential."

If the city council had passed an appropriation ordinance, the taxes would not have been diminished.    How, then, was the tax-payer injured by a failure to discharge this duty? It is true the omission to pass the ordinance was an irregularity in the proceedings, and it may be that a tax-payer might enjoin the disbursement of the taxes where the council has failed to adopt an appropriation ordinance.    The object of section 89, as is apparent from its language, is to limit and confine the city council, in the disbursement of public money, to such sums as may have been set forth in an appropriation ordinance.    What is embraced in such ordinance they may spend for the purpose specified in the ordinance, and no more.    But what has such an ordinance to do with

the levy and collection of taxes? As heretofore said, section 111 authorizes a levy, and although the appropriations may not have been made within the precise time required by section 89, I think, where the city council ascertains the amount of the appropriations and makes the levy within the time specified in section 111, that levy may be sustained. The proceedings may not be entirely regular, but in order to cure an irregularity in the proceeding which does not affect the substantial justice of the tax, section 191 of the Revenue law was enacted, which declares that "no error or informality in the proceedings of any of the officers connected with the assessment, levying or collecting of the taxes, not affecting the substantial justice of the tax itself, shall vitiate or in any manner affect the tax or the assessment thereof." This section seems broad enough to cure the irregularity complained of in the present case. Under this section, where an error or irregularity occurs in the proceedings of any of the officers in the assessment, levying or collection of the taxes, which does not affect the substantial justice of the tax, such error will not impair the validity of the proceedings. Here, the levy was not increased because of the failure of the city council to pass the appropriation ordinance within the first quarter of the fiscal year. No man's taxes were larger, or smaller, or more burdensome. Indeed, so far as appears, the tax levy was precisely the same as it would have been had the appropriation ordinance been duly passed. How, then, was the substantial justice of the tax affected? The answer is obvious. If not affected, then the omission or error of the city council was cured by the section cited.

In *Buck* v. *The People*, 78 Ill. 560, and in *Chiniquy* v. *The People*, id. 572, where local taxes were not levied and returned to the clerk in time, it was held the error in the proceedings did not affect the substantial justice of the tax, and it was cured by section 191. This court said in *Chiniquy* v. *The People*, 78 Ill. 577: "The amendment introduced into the

191st section of the present Revenue law has produced a radical change in proceedings to recover judgment for delinquent taxes, and has overruled or modified most if not all our previous decisions on the questions thus arising." In *Thatcher* v. *The People*, 79 Ill. 602, it was said: "Nearly if not all our previous decisions have been abrogated as rules for the determination of cases arising after the adoption of the amend-. ment." In *Fisher* v. *The People*, 84 Ill. 496, in construing section 191, the court further said: "This section we have construed as working a radical change in the policy of the law in respect to judgments for delinquent taxes, and rendering inapplicable all former decisions holding to great strictness and literalness in following the language of the statute in such cases." *Raly* v. *Guinn*, 76 Mo. 273, a case involving the construction of a statute in that State relating to an error in a proceeding where land was sold for taxes, will be found to be in point here. .

Mr. CHIEF JUSTICE SCHOLFIELD, also dissenting.