## WILLIAM Y. GRANT

*v.*

## A. C. BADGER *et al.*

*Filed at Ottawa May 16, 1889.*

1. LIMITATION—*act of 1839—payment of taxes—of an illegal tax.* In order to establish title by limitation under the act of 1839,—section 8 of the Revised Statutes of 1845,—the person in possession of the premises under color of title is required to pay all taxes *legally* assessed on the property for seven successive years. He is not required to pay a void tax.

2. In 1873 the legislature passed an act for the levy and collection of city taxes, under which a lot was taxed $5.70, which sum the holder of color of title paid. The courts having adjudged the act unconstitutional, in 1877 the legislature authorized the levy and collection of uncollected back taxes, requiring credit to be given to those who had paid the prior illegal levy. Under this act the city levied a tax on the lot of $6.15, which included forty-seven cents of an illegal tax, being for interest on void city bonds: *Held,* that the amount paid the city in 1874 was a payment under the act of 1877, and that the holder of the color of title was not bound to pay the illegal tax for interest on city bonds. The credit allowed by the act of 1877, in such case must be taken as applied on the valid taxes, and not on a void tax.

APPEAL from the Circuit Court of Will county; the Hon. CHARLES BLANCHARD, Judge, presiding.

Mr. EGBERT PHELPS, for the appellant:

The judgment under which the tax deed was made was void, as containing illegal taxes. The owner not appearing, may attack the judgment collaterally. *Nail Co.* v. *People,* 98 Ill. 399; *Gage* v. *Bailey,* 102 id. 12; *Riverside Co.* v. *Howell,* 113 id. 263; *Gage* v. *Busse,* 114 id. 589.

That the item in the tax levy for "Interest on Rolling Mill Bonds" is illegal and absolutely void, has already been decided by this court in *English* v. *The People,* 96 Ill. 566, which was an appeal from a judgment for taxes, involving the interest and part of the principal of this same series of rolling mill

bonds for which appellant's property was taxed. See, also, *Bissell* v. *City of Kankakee*, 64 Ill. 249.

We claim, as we shall show hereafter, that the forty-five cents for which the tax judgment was obtained against the land, was solely and exclusively for its *pro rata* share of interest on the rolling mill bonds, and hence, under the decision in 96 Ill. *supra*, illegal and void. But however that may be, it can not be denied that that illegal item of interest "entered into and formed a part of the judgment, and the sum for which the land was sold." In such case, this court has decided that the sale is void. *McLaughlin* v. *Thompson*, 55 Ill. 251; *Riverside Co.* v. *Howell*, 113 id. 262.

Appellant, in 1875, paid $5.70 as in full of city taxes on this lot for 1874. Under section 3 of the law of May 5, 1877, (Sess. Laws of 1877, p. 57,) this payment became a trust fund in the hands of the city, to be applied upon city taxes for 1874 under the subsequent levy. It is submitted that if this fund was sufficient to discharge all legal taxes under the new assessment, then, by the express provision of that act, nothing more could be collected against the property, and any judgment or sale for any excess over that sum would be void *ab initio.*

It has been shown that the city tax, under the new assessment, was $6.15, and that in that tax was embraced an item of forty-seven cents, for "interest on rolling mill bonds," which this court has already decided to be illegal and void. Deducting this item of forty-seven cents from the $6.15, there remains $5.68 as the total legal tax for 1874, being two cents less than the amount of appellant's funds already in the hands of the city in trust for the payment of those very taxes.

Messrs. GARNSEY & KNOX, for the appellees:

Plaintiff, to recover, as he claims, under the sixth section of the Limitation law, must show complete compliance with that statute, color of title claimed in good faith, payment of

all taxes, and possession,—the defendant, in any event, having shown outstanding title in a third party. (*Irving* v. *Brownell*, 11 Ill. 402; *Heacock* v. *Lubuke*, 107 id. 396.) He has failed to do this, for he suffered the property to be sold for taxes for 1874, his claim commencing June 14, 1872. This sale for taxes destroys the bar. *Irving* v. *Brownell*, 11 Ill. 402; *Holbrook* v. *Dickenson*, 56 id. 499; *Woodruff* v. *McHarry*, id. 218.

The record produced is conclusive evidence that the land was sold for taxes which he ought to have paid to make out his title. *Holbrook* v. *Dickenson*, 56 Ill. 499.

The ruling of this court, in effect, is, that the words "legally assessed," in the statute, do not mean "legal taxes," and that when the taxes are legally assessed,—that is, levied by the proper authorities and extended by the proper officer,—they must all be paid, to make out a valid bar under the statute. *Elston* v. *Kennicott*, 46 Ill. 187; *Fagan* v. *Rasier*, 68 id. 88; *Wettig* v. *Bowman*, 47 id. 17; *Allen* v. *Munn*, 55 id. 486.

It would be unjust that a party should take from a fee simple owner his property, and not pay taxes upon it, on the ground that they were illegal. See, also, by analogy, *Gage* v. *Pirtle*, 124 Ill. 504.

Mr. CHIEF JUSTICE CRAIG delivered the opinion of the Court:

This was an action of ejectment, brought by William Y. Grant, to recover the possession of lot 3, block 12, in Casseday's addition to Joliet. On a trial of the cause before the court without a jury, judgment was rendered against the plaintiff for costs, to reverse which he appealed.

The plaintiff claimed, on the trial, color of title and seven successive years' possession and payment of taxes. He read in evidence a deed, dated June 14, 1872, from Mary A. Kavanaugh, to himself, which purported to convey the premises. Under the deed, plaintiff immediately took possession of the lot, enclosing it with a fence, and erected a house upon it, and continued in the possession until December, 1881, when the

defendants entered into the possession of the lot. No question is made in regard to color of title and seven successive years' possession of the lot under color of title before action brought, but it is claimed that the plaintiff failed to establish seven successive years' payment of all taxes legally assessed on the property, and hence he failed to establish title under section 8 of the Limitation act of 1845. The act provides, that "every person in the actual possession of lands or tenements, under claim and color of title made in good faith, and who shall for seven successive years continue in such possession, and shall also, during said time, pay all taxes legally assessed on such lands or tenements, shall be held and adjudged to be the legal owner of said lands or tenements, to the extent and according to the purport of his or her paper title."

As observed before, color of title and seven years' possession, as required by the statute, was proven, and for the purpose of proving payment of taxes the plaintiff read in evidence tax receipts showing payment of taxes on the lot from 1872 to 1880, both inclusive. No question was raised in regard to the payment of any of the taxes for either of the years, except the city tax of the city of Joliet for the year 1874, and for the purpose of proving a break in the payment of all taxes assessed on the lot, the defendant offered in evidence a certified copy of the judgment, record, precept, and return of the county treasurer to the county clerk thereon, of a judgment and sale for taxes of the lot in question, for the city taxes of the city of Joliet, for the year 1874, showing that said lot was sold for taxes under a judgment rendered at the May term of the county court of Will county, 1878, for back taxes, assessed under the law entitled "An act in regard to the assessment, levy and collection of the taxes of incorporated cities in this State for years prior to the year 1877," passed and approved May 5, 1877. These records show the valuation of the lot to be $314, and that it was assessed to William Y. Grant; that the total tax extended was $6.15; that the credit to which said Grant was

entitled was $5.70, and that the amount of unpaid tax was forty-five cents, and that the sale was for the sum of ninety-six cents, of which fifty-one cents were costs, sale being made to James G. Elwood.

It appears from the evidence, that in the year 1875 the city of Joliet attempted to collect its taxes for 1874 under an act of April 15, 1873, known as "Bill 300." The books were placed in the hands of the collector, and some of the tax-payers paid their taxes. Among those who paid was the plaintiff, and upon payment of the amount due he received the following receipt:

"JOLIET, ILL., *March 27, 1875.*

"Received of William Y. Grant, Eleven 40-100 dollars, in full for city taxes assessed as follows upon the following described property in the city of Joliet, Will county, and State of Illinois, for the year 1874, to-wit:

| Description. | Sec. | Sub-lot. | Lot. | Block | Value Dollars | Total tax. |
|---|---|---|---|---|---|---|
| Casseday's Add. to Joliet | | | 3 | 12 | 300 | D. C.<br>5 70 |
| "      "      " | | | 1 | 13 | 300 | 5 70 |
| | | | | | | 11 40 |

MATHEW TOUHEY, *Collector.*"

Others contested the taxes, and the act under which the city had proceeded was held to be unconstitutional, and hence the collection of the taxes was defeated. To remedy this difficulty, the legislature, in 1877, passed an act which authorized cities to re-levy and collect back taxes which such cities had failed to collect under any unconstitutional law. (Laws of 1877, p. 56.) The second section of the act provided, that all payments which had been made under the first levy by any person or persons should be considered voluntary payments, and the party who had made payment should receive credit for the payment so made, in the new levy. That section of the act also provided, that if the amount of taxes under the new

levy should not exceed in amount the payment to be credited, then nothing should be collected; but if the taxes so extended should exceed such payment, then the excess, only, should be collected. Under this act the city of Joliet re-levied and proceeded to collect its back taxes for 1874, and among the items certified to the county clerk by the city council was one for interest on "rolling mill bonds," the *pro rata* share of which item upon the lot in question was forty-seven cents, being two cents more than the amount for which tax judgment was had. The "rolling mill bonds" were a donation made by the city of Joliet to the Union Coal, Iron and Transportation Company, to assist said company in erecting rolling mills at Joliet, and this item of forty-seven cents was actually extended upon the tax books and collected by the sale in question. In the new levy the tax against the lot in question, including the item of forty-seven cents for interest on rolling mill bonds, was $6.15, being forty-five cents more than plaintiff had paid on the prior levy, and for which he had received a receipt in full.

In order to establish title under the section of the statute heretofore cited, the person in possession of the premises under color of title is required to pay all taxes legally assessed on the property for seven successive years. Did the plaintiff pay all taxes legally assessed on the lot for the period indicated? There is, as observed before, no dispute as to the payment of the taxes for either year claimed by the plaintiff, except for the year 1874, and if the evidence establishes a payment for that year, then the title of plaintiff was made out. The amount which plaintiff paid in the year 1874, under the act of 1877 must be regarded as a payment on the taxes, as by the terms of the act plaintiff was entitled to a credit on the new levy for the amount which he had paid, and he could not be required to pay any additional amount, unless the taxes assessed under the new levy exceeded the amount paid. It is claimed that the taxes under the new levy exceeded the amount which plaintiff had originally paid, in the sum of forty-five cents. But the

item of forty-seven cents for interest on rolling mill bonds was illegal, as the city had no power to issue bonds in aid of a private manufacturing company, and had no power to levy or collect taxes to pay either interest or principal on such bonds. *English* v. *The People*, 96 Ill. 566, is decisive of this question.

But while it is conceded that the item of forty-seven cents is an illegal tax, it is said, you can not dissever the portion of the tax claimed to be illegal from that portion which is admitted to have been legal, and that the application of plaintiff's payment of $5.70 must be made on both portions of the tax,— that legal and that illegal,—in the proportion that forty-seven cents bears to $6.15, the entire tax. It is plain, if a portion of the money plaintiff paid to the city is to be applied in discharge of the illegal tax, a small amount of legal tax would remain unpaid. But the statute, as has been observed, allowed plaintiff a credit on the new levy for the amount which he had previously paid. The money was in the hands of the city, and the city was bound to make an application of the money in payment of a legal tax. The law would not sanction the payment of the money on an illegal tax, nor could the money be appropriated to an illegal purpose.

It is also insisted that plaintiff was bound to pay all the taxes, whether legal or illegal, and as he failed to do so he did not make out a title under the statute; and in support of this view we have been referred to *Elston* v. *Kennicott*, 46 Ill. 190, *Wettig* v. *Bowman*, 47 id. 21, and *Allen* v. *Munn*, 55 id. 486. We do not think these cases sustain the view of counsel. In the first case no effort was made to pay any portion of the tax, while the justness of the tax was not called in question. The only objection to the legality of the tax was, that the assessment roll did not contain the dollar-mark. In the second case there was no question in regard to the legality of the assessment and the legality of the tax, but it was insisted that the party was released from the payment by an act of the legislature, passed for the relief of certain persons in the "American Bottom."

So, too, in the *Munn case*, as said in the opinion: "The property, as appears, was taxed every year, like other property, and by a description perfectly definite, and appearing upon a recorded plat of this portion of the city, made by the town authorities."

We fully concur in the decision of each of the cases cited, but we do not think they control the question involved in this case. It must be conceded that a person, to come within the protection of the statute, must pay all taxes legally assessed on the premises. That was done in this case. The forty-five cents for which the lot was sold was a void tax, and if void it must be regarded as no tax. The plaintiff was under no obligation, legal or otherwise, to pay it, and the county authorities had no right whatever to sell the lot for the tax. The sale was void. (See *Riverside Co.* v. *Howell*, 113 Ill. 256.) We think the evidence introduced on the trial showed that plaintiff had paid all taxes legally assessed on the lot, for seven successive years, and as he had color of title, made in good faith, and continued in possession of the lot during the same period, he established paramount title, and was entitled to recover.

The judgment will be reversed, and the cause remanded.

*Judgment reversed.*